1  Kelly Woodruff (State Bar No. 160235)
   Gary M. Kaplan (State Bar No. 155530)
2  FARELLA BRAUN + MARTEL LLP
   235 Montgomery Street, 17th Floor
3  San Francisco, CA 94104
   Telephone: (415) 954-4400
4  Facsimile: (415) 954-4480
   Email: kwoodruff@fbm.com; gkaplan@fbm.com
5
   Attorneys for PLAINTIFF CHAPTER 7 TRUSTEE
6  TIMOTHY W. HOFFMAN

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SANTA ROSA DIVISION

11

12 | In re:                              | Case No. 09-13960

13 | CASCADE ACCEPTANCE               | Chapter 7
   | CORPORATION, a California corporation,
14 |
   |                    Debtor.
15

16 | TIMOTHY W. HOFFMAN, as Chapter 7   | Adversary No. _____
   | Trustee of Cascade Acceptance
17 | Corporation,
   |                                    | COMPLAINT (1) TO AVOID AND RECOVER
18 |                    Plaintiff,       | PROPERTY OF THE ESTATE, (2) FOR
   |                                    | DAMAGES FOR INJURY TO PROPERTY
19 |        v.                          | AND BREACH OF FIDUCIARY DUTY,
   |                                    | (3) FOR TURNOVER OF PROPERTY, AND
20 | BARNEY GLASER, an individual; FRED | (4) FOR DECLARATORY RELIEF;
   | TAYLOR, an individual; CAROLYN     | OBJECTIONS TO CLAIMS PURSUANT TO
21 | GLASER, an individual; LERNER &    | BANKRUPTCY RULE 3007(b)
   | BEAR, INC., a New York corporation;
22 | BONNIE GLASER, an individual;      | **JURY TRIAL DEMANDED**
   | BARNEY GLASER, JR., an individual;
23 | JILLIAN RHINE, an individual;
   | ANDREW RHINE, an individual; MARY
24 | CATHERINE TAYLOR SIEBEL, an
   | individual; MILL VALLEY FINANCIAL
25 | CORP., a California corporation; 1700
   | TWIN SISTERS, LLC, a California limited
26 | liability company; and GLASER
   | EDUCATIONAL FOUNDATION,
27 |
   |                    Defendants.
28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

25988\2469509.7

1    Plaintiff Timothy W. Hoffman, as Chapter 7 Trustee of Cascade Acceptance Corporation

2    (the "Trustee"), alleges as follows:

3                                    **INTRODUCTION**

4          1.      The Trustee brings this Adversary Proceeding to avoid and recover certain

5    transfers made by debtor Cascade Acceptance Corporation ("Debtor") to the above-captioned

6    defendants, to recover damages for the defendants' breaches of contract and their fiduciary duties

7    to Debtor, for injury to Debtor and its property, for turnover of property of the estate, for

8    declaratory relief and to object to Proof of Claim Nos. 18, 20, 21, 22, 28, 34-42, 58, 111, 124-

9    126, 136, 139.

10                              **JURISDICTION AND VENUE**

11         2.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C.

12   §§ 157(b) and 1334 because this action arises under the bankruptcy proceeding captioned *In re*

13   *Cascade Acceptance Corp.*, Case No. 09-13960, filed in the United States Bankruptcy Court for

14   the Northern District of California.

15         3.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C.

16   § 157(b)(2)(A), (E), (F), (H) and (O).

17         4.      Venue is proper in this court under 28 U.S.C. §1409(a) because Debtor's Chapter

18   7 case is pending in this district.

19                                      **PARTIES**

20         5.      Debtor Cascade Acceptance Corporation filed a voluntary petition for relief under

21   Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States

22   Bankruptcy Court for the Northern District of California on November 23, 2009 (the "Petition

23   Date"), commencing the above-captioned bankruptcy case (the "Bankruptcy Case").  On July 12,

24   2010, this Court entered an order converting the Chapter 11 case to Chapter 7.

25         6.      Plaintiff Timothy W. Hoffman is the duly appointed and qualified Chapter 7

26   Trustee in Debtor's Bankruptcy Case and is authorized to assert these claims in his capacity as the

27   Trustee.  In his capacity as Chapter 7 Trustee, Mr. Hoffman is a citizen of California.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES                                      - 2 -
25983\2469509.7

7.    Defendant Barney Glaser ("Barney") is, or at all relevant times was, the president and sole shareholder of record of Debtor, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B) and a resident of California.

8.    Defendant Fred Taylor ("Fred") is, or at all relevant times was, the vice president and secretary of Debtor, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B) and a resident of California.

9.    Defendant Carolyn Bear Glaser ("Carolyn") is, or at all relevant times was, the spouse of Defendant Barney Glaser, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B)(vi) and a resident of California.  On information and belief, Carolyn has an ownership interest in Debtor as the spouse of Defendant Barney Glaser.

10.   Defendant Lerner & Bear, Inc. ("L&B") is a New York corporation that is owned by Defendant Carolyn Bear Glaser, and on information and belief is controlled by Defendants Barney Glaser and Carolyn Bear Glaser and an insider of Debtor within the meaning of 11 U.S.C. §§ 101(31)(E).

11.   Defendant Bonnie Glaser ("Bonnie") is the daughter of Defendants Barney and Carolyn Glaser, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B)(vi), and a resident of California.

12.   Defendant Barney Glaser, Jr. ("Junior") is the son of Defendants Barney and Carolyn Glaser, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B)(vi), and a resident of California.

13.   Defendant Jillian Rhine née Glaser ("Jill") is the daughter of Defendants Barney and Carolyn Glaser, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B)(vi), and a resident of California.

14.   Defendant Andrew Rhine ("Rhine") is, or at all relevant times was, the spouse of Defendant Jill Rhine, the son-in-law of Defendants Barney and Carolyn Glaser, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B)(vi), and a resident of California.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 3 -

25988\2469509.7

15.     Defendant Mary Catherine Taylor Siebel ("Mary") is, or at all relevant times was, the ex-wife of Defendant Fred Taylor, an insider of Debtor within the meaning of 11 U.S.C. § 101(31)(B)(vi), and a resident of California.

16.     Defendant Mill Valley Financial Corp. ("Mill Valley") is a California corporation that is, or at all relevant times was, owned by Defendant Andrew Rhine and, on information and belief, is controlled by Defendants Barney Glaser and Andrew Rhine and an insider of Debtor within the meaning of 11 U.S.C. §§101(31)(E).

17.     Defendant 1700 Twin Sisters, LLC ("Twin Sisters") is a California limited liability company that is, or at all relevant times was, wholly-owned by Defendant Barney Glaser and is an insider of Debtor within the meaning of 11 U.S.C. §§ 101(31)(E).

18.     On information and belief, Defendant Glaser Educational Foundation is a California non-profit entity formed by Defendants Barney Glaser and Carolyn Bear Glaser and is an insider of Debtor within the meaning of 11 U.S.C. §§ 101(31)(E).

19.     Defendants are sometimes referred to herein collectively as "Insiders."

20.     At all relevant times, the Insiders were in control of Debtor.  Debtor was owned by Defendant Barney Glaser, and each of the remaining Insiders are partners, relatives, entities operated and controlled by Defendant Barney Glaser and/or his relatives, and therefore insiders of Debtor within the meaning of the Bankruptcy Code.

21.     At all relevant times, there was a unity of ownership between the Insiders and Debtor.

22.     At all relevant times, there was a pervasive use of corporate funds to pay the Insiders' personal expenses.

23.     At all relevant times, there was a commingling of funds and accounts between Debtor and the Insiders.

24.     At all relevant times, the Insiders controlled Debtor to allow Debtor to make substantial loans to the Insiders on terms more favorable than those provided to unaffiliated borrowers.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES                    - 4 -                    25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 4 of 61

25.     At all relevant times, the Insiders failed to respect the corporate separateness of Debtor.

26.     At all relevant times, the Insiders were the agents of, instrumentalities of, co-conspirators with, alter egos of, and/or joint venturers with each other.

27.     Each of these Defendants is liable for the damages caused by the other Defendants by virtue of the fact that the Defendants, and each of them, acted in concert in undertaking the actions alleged herein.  As such, each of the Defendants is jointly and severally liable with the others for their wrongful conduct and for all damages caused thereby.

## GENERAL ALLEGATIONS

**Debtor's Business**

28.     Debtor was incorporated in 1968 by its President and sole stockholder, Defendant Barney Glaser for the purpose of making real estate loans.  Defendant Fred Taylor began working for Debtor in 1971, eventually becoming the Vice President and Secretary, and along with Barney, comprised Debtor's management team as well as its only employees.

29.     Debtor operated by obtaining money from various private and business investors, and lending money out to third-parties seeking financing.

30.     Debtor's business model provided for investors to make "loans" of money to Debtor in exchange for interest-bearing promissory notes.  Each investor's loan was tracked in a separate investor account, also sometimes referred to by Debtor as a Note Payable Account.

31.     Depending on the terms of the note, investors had ready availability to part or all of their invested funds.  In practice, however, most investors simply left their investor account to grow over time.

32.     According to Debtor's 2009 financial statements, Debtor would lend money to third-parties at higher rates of interest than it would pay its investors, and secure the loans by the borrower's real property interests.  Debtor tracked each loan it made in a separate account, sometimes referred to by Debtor as a Note Receivable Account.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 5 -

25988\2469509.7

**Insiders' Manipulation of Debtor**

33.     From very early on, Barney and Fred treated Debtor as their own private bank for the benefit of themselves and their relations.

34.     Each of the Defendant Insiders, other than Twin Sisters, was an investor in Debtor with one or more investor accounts.

35.     Debtor's financial records reveal Debtor's payment of grossly excessive interest on Insiders' investments, excessive compensation to Barney and Fred, the transfers of millions of dollars from Debtor to Insiders, the pervasive use of corporate funds to pay Insiders' personal expenses, the transfer of title to real properties owned by Debtor to Debtor's Insiders, and millions of dollars of loans made by Debtor to Insiders on terms substantially more favorable than those provided to unaffiliated borrowers.

36.     Although Debtor's business model was to charge its borrowers higher interest than it paid its investors, thus creating a profit, that model applied only to parties that were not related to Barney or Fred.  Insiders received interest on their investor accounts at rates well above the average rate paid to unaffiliated investors, and at the same time, Insiders received large loans from Debtor on which they "paid" interest at rates well below the average rate paid to unaffiliated borrowers, if they paid at all.

37.     For example, Debtor's year end financial statements for 2009 state that Debtor paid its third-party revolving investor Notes Payable "average interest 6%" and its fixed term investor Notes Payable "average interest 7%" per annum.  Though it also claimed to pay the over $22 million in Insiders' Notes Payable "on the terms and at the interest rates used for the unsecured revolving notes" of unaffiliated investors, in actuality, Debtor routinely paid its Insider investors interest rates much higher than 6% or 7% per annum, and often credited the Insiders with higher interest than required by Debtor's Note Payable to the Insider.  Thus, although Insiders' promissory notes generally provided for interest at 1½% below prime rate, with a minimum of 6% and a maximum of 10% per annum, Debtor routinely paid its Insiders at least

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 6 -

25983\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 6 of 61

10% annual interest on their investments.[1]  Insiders received interest on their investments as follows:

- Barney                                30% - 53%
- Carolyn                               10% - 23%
- L&B                                   10%
- Glaser Educational Foundation         10%
- Bonnie                                10%
- Junior                                10%
- Jill                                  10% - 15%
- Fred                                  10% - 11%
- Mary                                  10%
- Rhine                                 8% - 10%
- Mill Valley                           10%

38.     The Insiders received this higher interest rate on their investments solely because they and/or Barney controlled Debtor.  Thus, in calendar year 2009, Barney received $1,481,524 in interest payments on an investment that fluctuated between $3.7 million and $5.5 million.  This amounts to an annual interest rate of between 27% and 40%.  In 2008, Barney received $1,702,009 in interest (which included $300,000 in "bonus interest") on an investment that never exceeded more than $5.8 million (a 29% return on the highest level of investment).  In 2007, Barney received $2,271,665 in interest (which included two "interest adjustments" of $510,000 and $479,000) on an investment that never exceeded more than $4.3 million (a 53% return on the highest level of investment).  And, in 2006, Barney received $1,982,962 in interest payments (including an $800,000 "interest adjustment"), on an investment that never exceeded more than $4.2 million (a 47% return on the highest level of investment).

39.     Crediting Insiders with higher interest payments than unaffiliated investors compounded the advantage afforded Insiders by allowing them to earn excess interest on their

---

[1] From January 2005 through the date this Complaint was filed, the prime rate was never higher than 8.25%, which would make the interest rate due on the Insider Notes Payable 6.75% *at the most*.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 7 -

25988\2469509.7

excess interest. Over the years of Debtor's existence, this allowed the Insiders to withdraw millions of dollars in unearned cash from Debtor, in the form of transfers to their personal bank accounts, wire transfers and checks.

40. Barney and Fred also caused Debtor to make numerous loans to Barney, Fred and their entities on terms substantially more-favorable than were offered to unaffiliated borrowers. For example, a typical interest rate on loans to unaffiliated third parties would range between 11% and 16% per year, whereas the interest rate "charged" on Insider loans to Barney, Fred and their entities was 5% or even less. Further, unlike loans to unaffiliated borrowers which were documented by promissory notes and secured by deeds of trust on the borrower's real property interests, on information and belief, Debtor rarely (if ever) received promissory notes or deeds of trust from Insider borrowers on their favorable loans.

41. The Insider Borrowers did not actually pay interest on their loans from Debtor. On some loans, Barney and Fred would "deem" interest to be paid by causing Debtor to post an interest payment on the loan to the Insider, and then enter a corresponding offset to the applicable Insider's investor account. On others, Barney and/or Fred caused Debtor to "deem" payments on the loan as having been made by adding the amount of the "deemed" payment to a second Note Receivable (sometimes referred to herein as a "shadow" account), which itself did not accrue any interest and was never paid.

42. Barney and Fred also profited from their control of Debtor by causing Debtor to pay them excessive and unreasonable compensation. For example, in 2008 Barney credited himself with $700,000 in salary (on top of $1.7 million in interest), despite having no employment agreement with Debtor or other document governing compensation, and despite having represented to unaffiliated investors that he drew a salary only from the Cascade Acceptance Corporation Money Purchase Pension Plan, which is a separate entity from Debtor. Similarly, in the most recent four-year period, Fred received $2,317,000 in salary and bonus, despite that his salary was allegedly set at $25,000 a month ($300,000 a year) by Debtor, and he agreed to manage the Debtor's Oakland apartment projects for no compensation.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES
- 8 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 8 of 61

43.     Barney and Fred were also provided "pension contributions" beyond anything allowed in Debtor's pension documents. Although the pension plan documents changed from time to time, they provided that the maximum permitted pension fund contribution was 25% or less of the recipient's annual compensation. Barney was credited with approximately $2.9 million of pension contributions since Debtor began keeping electronic records, despite that he and Debtor reported his compensation as $0 for almost every year.

44.     Additionally, Barney and Fred consistently used Debtor to pay substantial personal expenses for themselves and their families, which provided no benefit to Debtor. Barney and Fred caused Debtor to pay millions of dollars in personal real estate expenses, attorneys' fees, vehicle expenses, tax obligations, non-business travel expenses, education costs for their families, personal gifts, medical expenses and more.

45.     For example, on October 14, 1999, Barney and Carolyn executed a promissory note for $1,416,000, payable to Andrew Rhine. At the same time, Barney and/or Fred caused Debtor to enter into an Agreement re Assignment of Obligation Under Promissory Note, pursuant to which Barney and Carolyn Glaser assigned to Debtor, and Debtor accepted, the obligation on the $1,416,000 promissory note to Rhine. On information and belief, Barney and Carolyn never paid Debtor the $1,416,000 in cash as required by the assignment.

46.     Barney and/or Fred also caused Debtor to make direct transfers of hundreds of thousands of dollars to the Glaser Educational Foundation's investor account. This was not only an improper use of Debtor's funds that was not authorized by any loan documents, but it was also a benefit not provided to any unaffiliated investors.

47.     Barney and Fred also used Debtor's loans to third parties to profit personally. For example, in November 2005, Debtor made a loan to Janna Yates for $450,000 secured by real property in Kauai. The loan agreement, signed by Fred on behalf of Debtor, expressly provides that $100,000 of the proceeds will be held back by Debtor and will be disbursed to Barney when the loan is paid in full.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 9 -

25983\2469509.7

48.     On numerous occasions, Barney and Fred also caused Debtor to transfer properties Debtor foreclosed upon from unrelated third parties to entities owned and controlled by Barney and Fred.

49.     In or about 2000, Debtor foreclosed on a residential lot in Inverness, California and transferred the property to Barney for no consideration other than Barney's assumption of the loan to Debtor.  On information and belief, Barney has not made any payments on the Inverness loan and has never paid any interest on the loan, but on or about December 19, 2006, Barney and/or Fred caused Debtor to credit over $92,000 to Barney's loan account.  As of the Petition Date, the outstanding principal balance on the loan was $25,047.48.

50.     In or about 2002 and 2006, Debtor foreclosed on two residential properties securing loans to third parties:  9984 Eden Way and 93621 Lafayette, respectively.  On information and belief, Barney and/or Fred caused these properties to be transferred to Barney for no consideration other than Barney's assumption of the loan to Debtor.  The balance on the Eden Way loan when it was transferred to Barney was $3,385,833, but on each of April 2, 2004 and December 31, 2004, Barney and/or Fred caused Debtor to credit $1,400,000 to Barney's loan account.  As of the Petition Date, the balance on the Eden Way loan was $585,833.40.  Similarly, the balance on the Lafayette loan when it was transferred to Barney was $3,492,739, but on April 25, 2006, Barney and/or Fred caused Debtor to credit $3,248,242 to Barney's loan account.  As of the Petition Date, the balance on the Lafayette loan was $344,497.  On information and belief, Barney never made any principal payments on either of the two loans.

51.     In addition, on information and belief, Barney never paid any interest on the loan balances on the Eden Way or Lafayette loans.  Instead, Barney and/or Fred caused Debtor to create shadow interest accounts for each loan for the purpose of accruing interest.  As of the Petition Date, the shadow account for 9984 Eden Way had $824,229.73 in accrued but unpaid interest, and the shadow account for 93621 Lafayette had $282,430.00 in accrued but unpaid interest.  Although the two principal loans were identified in Debtor's Schedule B as accounts receivable, neither of the shadow interest accounts were scheduled.  Additionally, sometime after the Petition Date, and prior to the Debtor filing its proposed Chapter 11 Plan of Reorganization

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 10 -

25988\2469509.7

1    and Disclosure Statement, Barney and/or Fred caused the two loans to be written off without

2    payment to Debtor of the outstanding principal or accrued and unpaid interest from the two loans'

3    shadow accounts.

4         52.    Similarly, Debtor transferred a residential property identified by the loan account

5    9230 Silver Sand to Barney after foreclosure.  On information and belief, Barney and/or Fred

6    caused this property to be transferred to Barney for no consideration other than Barney's

7    assumption of the loan to Debtor.  According to Debtor's Schedule B, the balance on the Silver

8    Sand loan was $244,601.83, but on information and belief, Barney never made any principal or

9    interest payments on the loan.  Instead, Barney and/or Fred caused Debtor to create a shadow

10   interest account for the loan for the purpose of accruing interest.  As of the Petition Date, the

11   shadow account for Silver Sand had $72,324.64 in accrued but unpaid interest.  Although the

12   principal loan was identified in Debtor's Schedule B as an account receivable, the shadow interest

13   account was not scheduled.  Additionally, sometime after the Petition Date, and prior to the

14   Debtor filing its proposed Chapter 11 Plan of Reorganization and Disclosure Statement, Barney

15   and/or Fred caused the Silver Sand loan to be written off without payment to Debtor of the

16   outstanding principal or accrued and unpaid interest from the loan's shadow account.

17        53.    In 1996, Debtor also transferred a residential property located at 61 Porto Bello

18   Drive in San Rafael to Barney after foreclosure.  On information and belief, Barney and/or Fred

19   caused this property to be transferred to Barney for no consideration other than Barney's

20   assumption of the loan to Debtor.  According to Debtor's Schedule B, the balance on the Porto

21   Bello loan was $111,678.14 as of the Petition Date, although on information and belief, Barney

22   and/or Fred caused Debtor to grant Barney over $194,000 in "debt relief" shortly after his

23   acquisition of the property.  On information and belief, Barney never made any principal or

24   interest payments on this loan.  Although the Porto Bello loan was identified in Debtor's

25   Schedule B as an account receivable, sometime after the Petition Date, and prior to filing its

26   Chapter 11 Plan of Reorganization and Disclosure Statement, Barney and/or Fred caused the loan

27   to be written off without payment to Debtor of the outstanding principal or accrued and unpaid

28   interest.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES                                    - 11 -                              25988\2469509.7

54.     Barney and/or Fred caused Debtor to transfer at least three other residential properties to Barney and/or Carolyn after foreclosure, that Barney and/or Carolyn subsequently sold for a profit.  In 1994, Debtor foreclosed on property located at 46 Viento Way, Point Reyes Station, and then transferred title of the property to Barney and Carolyn for no consideration other than the assumption of a $140,327 loan from Debtor.  On information and belief, Barney and Carolyn never made any principal or interest payments on the loan, and in 1998, Barney and Carolyn sold the property for $340,000, generating a substantial profit.

55.     Similarly, in December 1993, Debtor took possession of another property in Point Reyes Station (200 Vallejo Avenue) and transferred the property to Barney and Carolyn allegedly for $500.  On information and belief, Barney and Carolyn never made any principal or interest payments on the loan, and in December 1996, Barney and Carolyn sold the property for $110,000.

56.     And in May 1994, Debtor foreclosed on property located on 14th Avenue in San Francisco, California.  Subsequently, in August 1994, Barney and/or Fred caused Debtor to transfer the property to Barney for no consideration other than assumption of a $375,000 senior loan from an unaffiliated lender.  Barney sold the property less than two years later for $560,000, again giving him a substantial profit.

57.     In 2008, Debtor foreclosed upon property referred to as Chowchilla, in Suisun Valley, California (the "Chowchilla property"), and on or about May 12, 2008, caused it to be transferred to Defendant 1700 Twin Sisters LLC ("Twin Sisters"), an entity wholly-owned by Barney.  Also in 2008, Debtor foreclosed upon property in Fairfield, California (the "Fairfield property"), and on or about May 8, 2008, caused it to be transferred to Twin Sisters.  In September 2008, Debtor transferred its interest in two properties it foreclosed upon in Oakland, California – apartment building and condominium projects (the "San Pablo properties") – to 31 Oxford, LLC ("Oxford"), an entity jointly owned by Barney and Fred.

58.     Debtor transferred its interest in these properties to Barney, Twin Sisters and Oxford for no consideration, other than the new owner's assumption of the non-recourse debt

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 12 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 12 of 61

owed to Debtor and secured by each property.[2] The debt on the Fairfield property is approximately $9.3 million, and Twin Sisters listed the property for sale for $13.5 million when it owned it. The debt on the Chowchilla property is approximately $7.5 million, and on information and belief Twin Sisters marketed the property for sale for greater than the amount of the debt. Because Twin Sisters became the owner of the properties, it (rather than Debtor) would receive any "upside" if the property were sold for more than the amount of the debt encumbering the property, while Debtor would be subject to all of the "downside" if the property realized less than the secured debt.

59.    Twin Sisters never actually made any payments owed under the loan documents (including debt service, late fees or property taxes on the properties securing the loans) during the time it owned the Fairfield and Chowchilla properties, and Barney and/or Fred caused Debtor not to enforce such obligations. Instead, Barney and/or Fred caused Debtor to "deem" payments on the loan as having been made by adding the amount of the "deemed" payment to a second Note Receivable account for each property, which itself did not accrue any interest and was never paid. The interest Twin Sisters owed to Debtor for the time it owned the Chowchilla property was over $3 million (approximately $1.3 million of which accrued post-petition), and the interest and late penalties Twin Sisters owed Debtor for the time it owned the Fairfield property was approximately $2.5 million (over $1 million of which accrued post-petition). Barney and/or Fred also caused Debtor, rather than Twin Sisters, to pay in excess of $300,000 in other property expenses related to the Chowchilla and Fairfield properties during the time Twin Sisters owned the Chowchilla and Fairfield properties.

**The Collapse of Debtor's Business**

60.    Beginning in the early 2000s, and no later than early 2005, many of Debtor's Notes Receivable became non-performing.

61.    In some instances, Debtor chose to foreclose on the property securing the debt. In many others, however, Debtor negotiated with the borrowers to extend or refinance the loan. In

---

[2] On information and belief, Oxford re-transferred the San Pablo properties back to Debtor in June 2009 at the purported insistence of Debtor's secured lender, Bank of Marin, and Twin Sisters re-transferred the Chowchilla and Fairfield properties back to Debtor on or about November 4, 2010.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 13 -

25988\2469509.7

these latter situations, Debtor did not change the valuation of its assets when they ceased performing, but rather continued to treat them as if they were generating income.

62. In several circumstances, Debtor issued extremely large loans under an arrangement whereby the borrower would received a second loan, which would be used to service the prior loan. In each circumstance, Debtor received no cash payments on the initial loans (sometimes in the tens of millions of dollars), but rather would periodically record interest "payments" by increasing the amount owing on the second, or even third, Note Receivable account that was not subject to any additional interest. There was no cash activity related to these postings and no cash realization by Debtor.

63. According to Debtor's year-end 2009 financial records, there were at least five such arrangements by Debtor, including the Chowchilla and Fairfield loans transferred to Twin Sisters (with approximately $17 million due and owing in the aggregate), Barney's personal Home Refinance Loan, with approximately $2.5 million outstanding in the aggregate and over $1 million of accrued and unpaid interest, and a $360,000 loan to Barney and Fred on a "9032 Divisadero" account, whose separate note for the deemed interest payments was nearly $700,000 at the time of filing the Complaint.

64. Because of Debtor's failure to generate sufficient cash from its loan portfolio, coupled with the facts that Debtor was incurring interest expenses on its obligations to the Insider investors at rates materially in excess to the rates Debtor was earning on Notes Receivable from Insiders, the Insiders' loans from Debtor failed to generate any cash flow, and Barney and Fred pervasively used Debtor's cash to pay personal expenses, Debtor's house of cards eventually collapsed.

65. At all times relevant to this Complaint, the actual net asset value of Debtor's holdings, without taking into account the influence of Barney and Fred's manipulative trading and valuation practices, did not exceed the amount owed to Debtor's creditor-investors. Thus, Debtor lacked adequate cash with which to make distributions to investors.

66. Nevertheless, Debtor continued to honor redemption requests submitted by investors demanding repayment of their Note Payable Accounts, particularly when the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 14 -

25988\2469509.7

withdrawal request came from an Insider. However, when several investors demanded repayment of their investor accounts totaling approximately $26 million in early 2009, Debtor did not have available cash to honor the request and was forced to borrow additional money to pay the investors.

67.     Shortly afterward, with Insider knowledge of the failing state of Debtor, Barney, Fred and other Insiders strategically realized on their investments and inflated interest, and between July 7, 2009 and September 30, 2009, Barney and/or Fred caused Debtor to "deem" ten of their personal loans repaid, totaling over $3 million, and, on at least four occasions, caused Debtor to "write off" the balance due from Barney and/or Fred on personal, unsecured loans they received from Debtor.

**The Bankruptcy Filing**

68.     On November 23, 2009, Debtor filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

69.     Debtor's Schedules and Statement of Financial Affairs ("SOFA") filed in the Chapter 11 case reflected extensive, material transactions and relationships between Debtor and Insiders prior to the Petition Date, as described generally above. As merely one example, Debtor identified more than $5.8 million in transfers made to Insiders in the one year prior to the Petition Date. Some of the transactions continued post-petition, as reflected in Debtor's Monthly Operating Reports filed in the Bankruptcy Case.

70.     Although Debtor had made numerous substantial loans to Insiders, Barney and/or Fred caused Debtor not to include all the Insiders' loans in Debtor's Schedules and SOFA, even though they were not paid off. On information and belief, Barney had the following loans outstanding as of the Petition Date, but did not include them in Debtor's Schedule of Notes Receivable:

| | |
|---|---:|
| • 40 Meadow Dr., Mill Valley | $400,000 |
| • 1350 Pine Trail, Alpine Meadows | 93,723 |
| • 63 Meadow Dr., Mill Valley | 400,000 |
| • 35 Dorset Lane, Mill Valley | 189,191 |
| • 29 Dorset Lane, Mill Valley | 400,000 |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 15 -

25988\2469509.7

71.     On January 12, 2010, after the Petition Date, Barney Glaser, as President of Debtor, recorded full reconveyances of the deeds of trust on 63 Meadow Drive and 35 Dorset. On information and belief, Barney paid no consideration for the reconveyances.

72.     Based on, among other things, the United States Trustee's allegations that Debtor's "transfers of assets to or for the benefit of insiders and their associates may have been without a proper basis," the court appointed an examiner (the "Examiner") in the Chapter 11 case by Order entered on February 8, 2010.

73.     The Examiner's Initial Report, which was filed in the Chapter 11 case on April 26, 2010, concluded that the Insiders received substantial payments and transfers from Debtor in the two year period prior to the Petition Date, and recommended complete reconstruction of Debtor's accounting records in light of the failure of Debtor to maintain proper accounting records.

74.     Debtor then engaged its accounting firm to perform a reconstruction of certain of Debtor's accounting records in the Spring of 2010.  Based on these reconstructed records, the Examiner issued his Second Report on July 1, 2010, detailing various transactions and relationships between Debtor and Insiders in the two years prior to the Petition Date.

75.     On July 12, 2010, this Court entered an order converting the Chapter 11 case to Chapter 7, and appointing Timothy W. Hoffman as the Chapter 7 Trustee.

76.     The Debtor's financial records confirmed that the Insiders received millions of dollars of transfers from Debtor shortly before the Petition Date, and that Debtor entered into numerous improper transactions and arrangements with Insiders.  The allegations in this Complaint are based on, among other things, the findings in the Examiner's reports, as well as Debtor's own financial records and bankruptcy filings.

### **FIRST CLAIM FOR RELIEF**

**(Avoidance and Recovery of Preferential Transfers under Bankruptcy Code §§ 547, 550 – Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie Glaser, Barney Glaser, Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational Foundation, Andrew Rhine and Mill Valley Financial Corporation)**

77.     The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 16 -

25988\2469509.7

78.     On or within one year before the Petition Date, Debtor made certain transfers to the Defendant Insiders totaling at least $7,243,136 (collectively, the "Insider Preferences"), including those listed on the schedule of Insider Preferences attached hereto as Exhibit "1-A" and incorporated herein by reference.

79.     The types of Insider Preferences the Insiders received fell generally into two categories:  (a) actual payments or distributions made by Debtor to or for the benefit of the Insider; and (b) payment of Insiders' personal expenses by reducing (theoretically) Debtor's antecedent debt due on the Insiders' Notes Payable.

80.     The Insider Preferences constituted transfers of an interest in property of Debtor.

81.     At the time the Insider Preferences were made, Defendants were creditors of Debtor on account of loans made to Debtor and/or services provided to Debtor.

82.     The Insider Preferences were made on account of an antecedent debt owed by Debtor to Defendants for loans made to Debtor and/or services provided to Debtor.

83.     The Insider Preferences were made to or for the benefit of Defendants as creditors of Debtor.

84.     At the time of the Insider Preferences, Debtor was insolvent.

85.     In each case, the Insider Preferences enabled Defendants to receive more than Defendants would have received if:  (i) the case was administered under Chapter 7 of the Bankruptcy Code, (ii) the Insider Preferences had not been made, and (iii) such creditors had received payment of the debt to the extent provided in the Bankruptcy Code.

86.     Based on the foregoing, the Insider Preferences constitute avoidable preferences pursuant to 11 U.S.C. § 547, and pursuant to 11 U.S.C. § 550, the Trustee may recover the transfers from Defendants in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

**(Avoidance and Recovery of Preferential Transfers under Bankruptcy Code §§ 547, 550 – Against Defendants Lerner & Bear, Inc. and Mill Valley Financial Corp.)**

87.     The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

25988\2469509.7

88.     To the extent Defendants L&B and Mill Valley are found not to be "insiders" within the meaning of the Bankruptcy Code, the Trustee alleges as follows.

89.     On or within 90 days before the Petition Date, Debtor made certain transfers to Defendants L&B and Mill Valley totaling at least $99,172.87 (collectively, the "Non-Insider Preferential Transfers"), including those listed on the schedule of Preferential Transfers attached hereto as Exhibit "1-B" and incorporated herein by reference.

90.     The types of Non-Insider Preferential Transfers L&B and Mill Valley received fell generally into two categories:  (a) actual payments or distributions made by Debtor to or for the benefit of Defendants L&B and Mill Valley; and (b) payment of L&B's and Mill Valley's personal expenses by reducing (theoretically) Debtor's antecedent debt due on their Notes Payable.

91.     The Non-Insider Preferential Transfers constituted transfers of an interest in property of Debtor.

92.     At the time the Non-Insider Preferential Transfers were made, L&B and Mill Valley were creditors of Debtor on account of loans made to Debtor and/or services provided to Debtor.

93.     The Non-Insider Preferential Transfers were made for and on account of an antecedent debt owed by Debtor to L&B and Mill Valley for loans made to Debtor and/or services provided to Debtor.

94.     The Non-Insider Preferential Transfers were made to or for the benefit of L&B and Mill Valley as creditors of Debtor.

95.     At the time of the Non-Insider Preferential Transfers, Debtor was insolvent.

96.     In each case, the Non-Insider Preferential Transfers enabled L&B and Mill Valley to receive more than they would have received if:  (i) the case was administered under Chapter 7 of the Bankruptcy Code, (ii) the Non-Insider Preferential Transfers had not been made, and (iii) such creditors had received payment of the debt to the extent provided in the Bankruptcy Code.

97.     Based on the foregoing, the Non-Insider Preferential Transfers constitute avoidable preferences pursuant to 11 U.S.C. § 547, and pursuant to 11 U.S.C. § 550, the Trustee

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 18 -

25988\2469509.7

Case: 11-03061     Doc# 1     Filed: 03/11/11     Entered: 03/11/11 19:07:41     Page 18 of
61

may recover the transfers from Defendants L&B and Mill Valley in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers Under Bankruptcy Code §§ 548(a)(1), 550 – Against All Defendants)**

98.     The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

99.     On or within two years before the Petition Date, Debtor made certain transfers to the Defendant Insiders totaling at least $37,720,025 (collectively, the "Fraudulent Transfers"), including those listed on the schedule of Fraudulent Transfers attached hereto as Exhibit "2" and incorporated herein by reference.

100.    The types of Fraudulent Transfers the Insiders received fell into the following general categories:  (a) payment of unearned compensation, excess interest, profits and other "credits" to investor accounts; (b) loans to Insiders on terms more favorable than those provided to unaffiliated borrowers; (c) payoff or satisfaction of Insiders' debt, including failing to record shadow interest accounts as a receivable; (d) transfers of property to Insiders' entities; and (e) payment of Insiders' personal expenses with estate property.

101.    In each case, the Fraudulent Transfers were transfers of an interest in property of Debtor.

102.    In each case, Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

103.    Upon information and belief, Debtor (i) was insolvent on the dates each of the Fraudulent Transfers were made, (ii) was engaged in business or a transaction, or was about to engage in such business or a transaction, for which any property remaining with Debtor was an unreasonably small capital, or (iii) intended to incur, or believed it would incur, debts that would be beyond the ability of Debtor to pay as such debts matured.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 19 -

25988\2469509.7

104.    Based on the foregoing, the Fraudulent Transfers constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548, and pursuant to 11 U.S.C. § 550, the Trustee may recover the transfers from Defendants in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers Under California Civil Code § 3439 *et seq.* and Bankruptcy Code §§ 544(b), 550 – Against All Defendants)**

105.    The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

106.    On or within four years before the Petition Date, Debtor made millions of dollars of transfers to the Defendant Insiders (collectively, the "State Law Fraudulent Transfers"). Because Barney and/or Fred did not keep thorough and accurate financial records for Debtor, the Trustee has limited information about all of the transfers that were made. For example, the Trustee was able to recover only approximately 50% of the Debtor's bank statements for the period November 23, 2005 through November 23, 2007. Nevertheless, the Trustee alleges that Debtor made many millions of dollars of State Law Fraudulent Transfers, including those listed on the schedule of State Law Fraudulent Transfers attached hereto as Exhibit "3" and incorporated herein by reference.

107.    The Trustee reserves the right to amend the complaint to supplement the allegations in this Fourth Claim for Relief and to allege new and additional State Law Fraudulent Transfers once he recovers the missing bank statements for the period November 23, 2005 through November 23, 2007.

108.    The types of State Law Fraudulent Transfers the Insiders received fell into the following general categories: (a) payment of unearned compensation, excess interest and other "credits" to investor accounts; (b) loans to Insiders on terms more favorable than those provided to unaffiliated borrowers; (c) payoff or satisfaction of Insiders' debt, including failing to record shadow interest accounts as a receivable; (d) transfers of property to Insiders' entities; and (e) payment of Insiders' personal expenses with estate property.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 20 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 20 of 61

1   109.    In each case, the State Law Fraudulent Transfers were transfers of an interest in

2   property of Debtor.

3   110.    In each case, Debtor received less than reasonably equivalent value in exchange

4   for the State Law Fraudulent Transfers.

5   111.    Upon information and belief, Debtor (i) was insolvent at the time each of the State

6   Law Fraudulent Transfers was made or became insolvent as a result of the State Law Fraudulent

7   Transfers, (ii) was engaged in a business or a transaction, or was about to engage in such business

8   or a transaction, for which the remaining assets of Debtor were unreasonably small in relation to

9   the business or transaction, or (iii) intended to incur, or believed or reasonably should have

10  believed that it would incur, debts that would be beyond the ability of Debtor to pay as such debts

11  matured.

12  112.    Based on the foregoing, the State Law Fraudulent Transfers constitute avoidable

13  fraudulent transfers pursuant to California Civil Code §§ 3439.04(a)(2), 3439.05, 3439.07(a)(1),

14  and 544(b), and pursuant to 11 U.S.C. § 550, the Trustee may recover such transfers from

15  Defendants in an amount to be determined at trial.

16  **FIFTH CLAIM FOR RELIEF**

17  **(Avoidance and Recovery of Post-Petition Transfers Under Bankruptcy Code §§ 549, 550 –
    Against Defendants Barney Glaser, Fred Taylor, Carolyn Glaser, Bonnie Glaser, Barney**

18  **Glaser Jr., Twin Sisters LLC and the Glaser Educational Foundation)**

19  113.    The Trustee incorporates all the above paragraphs of this Complaint as if fully set

20  forth herein.

21  114.    Prior to the Petition Date, Debtor made numerous loans to Defendants Barney,

22  Carolyn, Fred and Twin Sisters (collectively, the "Insider Borrowers") as reflected in individual

23  loan accounts (collectively, "Insider Notes Receivable"), including those identified in the

24  schedule of Insider Notes Receivable accounts attached hereto as Exhibit "5" and incorporated

25  herein by reference.

26  115.    In most instances, Barney and/or Fred caused Debtor to create shadow interest

27  accounts for each Insider Note Receivable for the purpose of accruing interest.  Debtor received

28  no interest payments on the Insider Notes Receivable, but would instead record interest

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 21 -

25988\2469509.7

"payments" by increasing the amount owing on the shadow account that was not itself subject to any additional interest. On information and belief, the Insider Borrowers never repaid the interest balance owing on the shadow accounts. After the Petition Date, Barney and/or Fred caused Debtor to write-off, or fail to record or collect, at least the following interest balances on the Insider Notes Receivable, none of which were identified in Debtor's Schedules as accounts receivable ("Post-Petition Interest Forgiveness"):

| | |
|---|---:|
| • 9532 Home Refinance | $1,037,137 |
| • 7022 Evans | 29,257 |
| • 830605 Catalpa | 37,087 |
| • 830613 Catalpa2 | 113,757 |
| • 8917 Weiss | 154,020 |
| • 9033 Divisadero (Barney and Fred) | 685,332 |
| • 9034 Haye-Webb | 215,462 |
| • 9035 Kekaha | 144,677 |
| • 9036 Evelyn | 356,642 |
| • 90361 Evelyn Remodel | 312,531 |
| • 9105 Baker | 129,496 |
| • 9226 Roque Mora | 300,324 |
| • 9230 Silver Sand | 72,325 |
| • 9233 Lae | 193,898 |
| • 9330 Bodega Wrap | 147,756 |
| • 9351 Yates | 12,000 |
| • 93511 Yates II | 9,520 |
| • 9353 Hedenskoog | 660 |
| • 9357 Yates Kekaha | 43,810 |
| • 9359 42 Meadow | 11,586 |
| • 9360 21 Diamond Head | 3,256 |
| • 9362 Lafayette | 282,430 |
| • 9363 Lafayette Sale | 207,475 |
| • Land Loan | 8,700 |
| • Tricity Loan | 395,548 |
| • 94 Brun (Chowchilla) – Twin Sisters' ownership | 813,511 |
| • 120 Brun (Chowchilla) – Twin Sisters' ownership | 503,854 |
| • 110 Cousins (Fairfield) – Twin Sisters' ownership | 750,756 |
| • 111 Cousins (Fairfield) – Twin Sisters' ownership | 314,187 |
| **TOTAL:** | **$7,286,994** |

116. Prior to the Petition Date, Barney and/or Fred caused Debtor to make four loans to Barney: 93621 Lafayette (with a balance owed as of the Petition Date of $344,497); 9984 Eden Way (with a balance owed as of the Petition Date of $484,833); 92330 Silver Sand (with a

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 22 -

25988\2469509.7

balance owed as of the Petition Date of $244,601.83); and 9336 Porto Bello (with a balance owed as of the Petition Date of $111,678.14). Debtor identified these loans on Schedule B of its bankruptcy schedules, but post-petition, Barney and/or Fred caused Debtor to write off the balance of the loans (the "Post-Petition Forgiveness of Debt").

117. Prior to the Petition Date, Barney and/or Fred caused Debtor to make at least two loans to Barney as to which the related deeds of trust were reconveyed without consideration after the Petition Date. In February 2003, Debtor loaned Barney $400,000 towards the purchase of property at 63 Meadow Drive, Mill Valley, California. In January 2004, Debtor loaned Barney $181,191 towards the purchase of property at 35 Dorset Lane, Mill Valley, California. On or about January 12, 2010, Barney and/or Fred caused Debtor to reconvey the deeds of trust for 63 Meadow Drive and 35 Dorset Lane to Barney with no consideration from Barney for the reconveyances (the "Post-Petition Loan Reconveyances").

118. In addition, prior to the Petition Date, Debtor loaned $7.5 million to Andrew Lewis secured by an industrial property located in Santa Clara County, California. On information and belief, the borrower failed to make any principal or interest payments on the loan, but Debtor did not report this loan on its SOFA or bankruptcy schedules. In December 2010, after the Petition Date, the owner of the property transferred title to Patrick Henry Property LLC for no monetary consideration. Patrick Henry Property LLC is an entity incorporated by Barney on September 2, 2009, with Barney and Andrew Lewis as its sole officers and its principal place of business at Barney's property at 31 Oxford St. (the "Post-Petition Transfer of Property").

119. In 2010, after the Petition Date, Debtor made a $250,000 pension contribution to Barney's investor account, and posted it to his investor account as of June 2009 to conceal that it was made after Debtor filed for bankruptcy (the "Post-Petition Pension Contribution"). This contribution constituted a post-petition transfer of property of Debtor's estate.

120. Also after the Petition Date, Barney and/or Fred caused Debtor to make the following payments to or for the benefit of Insiders, which payments constitute post-petition transfers of property of Debtor's estate (the "Post-Petition Insider Payments"):

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 23 -

25988\2469509.7

| Date | Payee | Description | Amount |
|------|-------|-------------|--------|
| 11/23/09 | Bonnie Glaser | Cash payment | $5,000.00 |
| 12/13/09 | Bonnie Glaser | Interest on Investor Acct. | 50,878.00 |
| 01/01/10 | Barney Glaser, Jr. | Interest on Investor Acct. | 763.30 |
| 01/14/10 | Glaser Ed. Found. | Cash payment | 9,562.50 |
|  | **TOTAL:** |  | **$66,203.80** |

121. After the Petition Date, Barney and/or Fred also have caused Debtor to continue to pay certain of their personal expenses, including those itemized on the schedule of post-petition transfers attached as Exhibit "4" and incorporated herein by reference (collectively with the Post-Petition Interest Forgiveness, Post-Petition Forgiveness of Debt, Post-Petition Loan Reconveyances, Post-Petition Property Transfers, Post-Petition Pension Contribution and Post-Petition Insider Payments, the "Post-Petition Transfers").

122. The Post-Petition Transfers are not authorized under any provision of the Bankruptcy Code, and were not authorized by order of the Court.

123. Accordingly, pursuant to Bankruptcy Code § 549, the Post-Petition Transfers may be avoided by the Trustee, and the Trustee hereby elects to avoid such transfers.

124. Pursuant to 11 U.S.C. § 550, the Trustee may recover such the Post-Petition Transfers from Defendants Barney and Fred in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

**(Breach of Contract – Against Defendants Barney Glaser, Carolyn Glaser, Fred Taylor and Twin Sisters)**

125. The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

126. Prior to the Petition Date, Debtor made numerous loans to Insider Borrowers, including those identified in the schedule of Insider Notes Receivable in Exhibit "5".

127. With the exception of the loan to Barney for 9352 Home Refinance, on information and belief, none of the Insider Notes Receivable was documented by a promissory note. Rather, the loans were documented by Barney and/or Fred through the creation of a loan account, and a separate shadow interest account for each Insider Note Receivable.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 24 -

25988\2469509.7

128.    Each of the Insider Notes Receivable accounts provided for the Insider Borrowers to pay interest to Debtor on the outstanding principal balance.  On information and belief, no document issued by Debtor to the Insider Borrowers states that the Insider Borrowers may repay either the principal or the interest on the Insider Notes Receivable by adjusting the balance in the particular Insider Borrower's investor account or by creating a separate loan account in which to accrue the interest and avoid the corresponding compound effect.

129.    The Insider Notes Receivable are valid, binding and enforceable contracts as between Debtor, on the one hand, and the particular Insider Borrowers, on the other hand.

130.    Debtor performed its obligations under each of the Insider Notes Receivable.

131.    Shortly before the Petition Date, Barney and/or Fred caused Debtor to "deem" the following Insider Notes Receivable identified on Exhibit 5 as repaid, despite that, on information and belief, no payments were made to or received by Debtor on these Insider Notes Receivable:

- 90361 remodel                          $1,404,725
- 9361 Mini Cooper                        $3,235
- 19233 Lae                               $35,644
- 830605 Catalpa1                         $29,648
- 830613 Caltalp2                         $83,428
- 8917 Weiss                              $101,608
- 9032 Divisadero                         $230,000
- 9036 Evelyn                             $174,997
- 9226 Roque Mora                         $252,076
- House line2                             $76,281[3]

       **TOTAL:**                         **$2,391,642**

132.    Additionally, Barney and/or Fred failed to repay or even "deem" repaid the following balances on their Insider Notes Receivable, and these amounts are still due and owing as of the date of this Complaint:

---

[3]   Although in some, but not all, of the payoffs, Barney and/or Fred caused Debtor to enter a corresponding reduction in their investor accounts, in the case of the "house line2" account, Barney and/or Fred caused Debtor to **add** the $76,281 payoff amount to both Barney's investor account and the "house line2" loan account.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 25 -

25988\2469509.7

|   |   |
|---|---|
| • 9352 Home Refinance | $2,477,133 |
| • 9336 Porto Bello | 111,678 |
| • 9038 Gould | 55,715 |
| • 92xx10 | 25,047 |
| • Land loan | 45,000 |
| • Parkman House (Barney and Fred) | 137,751 |
| • 29 Dorset Lane, Mill Valley, CA | 400,000 |
| • 40 Meadow Drive, Mill Valley, CA | <u>400,000</u> |
| **TOTAL:** | **$3,652,324** |

133.     Barney failed entirely to repay the following four of his Insider Notes Receivable, and, after the Petition Date, Barney and/or Fred caused Debtor to write them off as uncollectible:

|   |   |
|---|---|
| • 9984 Eden Way | $585,833 |
| • 93621 Lafayette | 344,497 |
| • 9230 Silver Sand | 244,602 |
| • 9336 Porto Bello | <u>111,678</u> |
| **TOTAL:** | **$1,286,610** |

134.     Additionally, Barney failed entirely to repay the following Insider Notes Receivable, and, after the Petition Date, Barney and/or Fred caused Debtor to record a Full Reconveyance of the loans, despite that, on information and belief, no consideration was paid by Barney for the reconveyance:

|   |   |
|---|---|
| • 63 Meadow | $400,000 |
| • 35 Dorset Lane | <u>189,191</u> |
| **TOTAL:** | **$589,191** |

135.     Finally, according to the Debtor's financial records, no actual direct interest payments were ever made on the Insiders Notes Receivable.  Instead, many of the interest "payments" were deemed to have been made through a reduction in another account, although many of the alleged interest "payments" can not be traced to offsetting accounts, if they occurred at all.

136.     In other circumstances, Barney and/or Fred caused a separate Note Receivable account to be recorded on Debtor's books to record "deemed" interest payments purportedly made on the Insider Notes Receivable, without ever providing actual payments to Debtor.  In at

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 26 -

25988\2469509.7

least one such case, on Barney's home refinance loan in the amount of approximately $2,477,133, Barney caused Debtor to "deem" over $1 million in interest payments as having been made over the life of the loan by creating a second (interest free) Insider Note Receivable account, on which Barney has never made a single payment. Moreover, the interest payments that were accrued on the home refinance loan's shadow interest account were substantially less than the prime minus one and half percent, with a minimum of 6% and maximum of 10%, that the promissory note on this Insider Note Receivable required.

137. On information and belief, Barney and/or Fred failed entirely to repay the shadow interest accounts on at least the following Insider Notes Receivable:

| | |
|---|---|
| • 9532 Home Refinance | $1,037,137 |
| • 7022 Evans | 29,257 |
| • 830605 Catalpa | 37,087 |
| • 830613 Catalpa2 | 113,757 |
| • 8917 Weiss | 154,020 |
| • 9033 Divisadero (Barney and Fred) | 685,332 |
| • 9034 Haye-Webb | 215,462 |
| • 9035 Kekaha | 144,677 |
| • 9036 Evelyn | 356,642 |
| • 90361 Evelyn Remodel | 312,531 |
| • 9105 Baker | 129,496 |
| • 9226 Roque Mora | 300,324 |
| • 9230 Silver Sand | 72,325 |
| • 9233 Lae | 193,898 |
| • 9330 Bodega Wrap | 147,756 |
| • 9351 Yates | 12,000 |
| • 93511 Yates II | 9,520 |
| • 9353 Hedenskoog | 660 |
| • 9357 Yates Kekaha | 43,810 |
| • 9359 42 Meadow | 11,586 |
| • 9360 21 Diamond Head | 3,256 |
| • 9362 Lafayette | 282,430 |
| • 9363 Lafayette Sale | 207,475 |
| • 9984 Eden Way | 824,230 |
| • Land Loan | 8,700 |
| • Tricity Loan | 395,548 |
| **TOTAL:** | **$4,904,686** |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 27 -

25988\2469509.7

138.    Likewise, Twin Sisters owned the Fairfield and Chowchilla properties for approximately 30 months before the Trustee was able to recover title.  During the time it owned the properties, Twin Sisters never made any payments owed under the loan documents (including principal or interest).  Instead, Barney and/or Fred caused Debtor to "deem" interest paid by adding the amounts owed to separate shadow interest accounts (called "Cousins II" and "Brun II" in Debtor's financial records), which themselves bore no interest and were never paid.  Accordingly, Twin Sisters breached its obligation to pay debt service owed to the Debtor in the amount of $3,090,805 on the Chowchilla property and $2,443,145 on the Fairfield property, for a total of $5,533,950.

139.    Accordingly, the Insider Borrower Defendants have breached their respective contracts by failing to remit principal and interest amounts due to Debtor.

140.    Based on the foregoing, the Trustee is entitled to damages in an amount to be determined at trial, but in no event less than $18 million plus pre- and post-judgment interest and the cost of collection.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duties – Against Defendants Barney Glaser and Fred Taylor)

141.    The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

142.    By virtue of his position as President and sole shareholder of Debtor, Defendant Barney Glaser owed a fiduciary duty to Debtor, its bankruptcy estate and creditors.  Among other things, such fiduciary duty required that Barney act only in the interests of Debtor and its bankruptcy estate and creditors, that he preserve the value of the assets of the estate of Debtor, and that he refrain from actions which would have the effect of depleting or diminishing the value of the assets of Debtor and its bankruptcy estate, particularly any such actions which would benefit Barney personally at the expense of Debtor's estate and creditors.

143.    By virtue of his position as Vice President and Secretary of Debtor, Defendant Fred Taylor owed a fiduciary duty to Debtor, its bankruptcy estate and creditors.  Among other things, such fiduciary duty required that Fred act only in the interests of Debtor and its

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 28 -

25988\2469509.7

1   bankruptcy estate and creditors, that he preserve the value of the assets of the estate of Debtor,

2   and that he refrain from actions which would have the effect of depleting or diminishing the value

3   of the assets of Debtor and its bankruptcy estate, particularly any such actions which would

4   benefit Fred personally at the expense of Debtor's estate and creditors.

5          144.    By causing or permitting the purported Preferential Transfers and Fraudulent

6   Transfers of Debtor's property to Barney, Fred and their families and related entities, Barney and

7   Fred breached their fiduciary duties to Debtor.  Such breaches of fiduciary duty were

8   compounded because (a) Barney, Fred and their entities received loans from Debtor on terms

9   more favorable to them than to non-affiliated entities; (b) Barney and Fred (who had the benefit

10  of material nonpublic information regarding Debtor's increasingly dire financial situation),

11  received and caused their families and related entities to receive substantial payments and

12  distributions from Debtor, particularly in the period shortly before the Petition Date, in amounts

13  exceeding those paid to non-insider creditors who lacked such material information; (c) Barney

14  and Fred caused Debtor to pay substantial personal expenses of them and their families and

15  related entities, and failed to respect the corporate separateness of Debtor; (d) Barney and Fred

16  used their positions of control over Debtor to determine the amount of salary, bonuses and other

17  remuneration they should each be paid, determined not on the basis of the best interest of Debtor,

18  but rather on the basis of the best financial advantage to Barney and Fred; and (e) Barney and

19  Fred usurped Debtor's corporate opportunities through the acquisition of Debtor's properties and

20  the opportunity to gain from the sale of those properties.

21         145.    Barney's and Fred's breaches of fiduciary duty has caused financial loss to

22  Debtor's estate in an amount to be established according to proof.

23         146.    The actions of each of Defendants Barney and Fred were willful, fraudulent and

24  malicious.

25         147.    Accordingly, the Trustee seeks judgment for compensatory and punitive damages

26  from each of Defendants Barney Glaser and Fred Taylor in an amount to be fixed at trial.

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 29 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 29 of
61

## EIGHTH CLAIM FOR RELIEF

### (Usurpation of Corporate Opportunity – Against Defendants Barney Glaser and Fred Taylor)

148.    The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

149.    In their positions as officers and sole management of Debtor, Defendants Barney and Fred owed Debtor a fiduciary duty to take no action that would harm Debtor and to always act in Debtor's best interests.  Part of Barney and Fred's fiduciary duty to Debtor prohibits them from seizing for themselves a business opportunity that would otherwise have been available to Debtor.

150.    Debtor was in the business of making real estate loans and, in situations where the borrower defaults on the loan, of foreclosing on the property securing the loan and either reselling the property or using the property for its own account.

151.    In the case of the Inverness, Silver Sand, Porto Bello, Eden Way, Lafayette, Viento Way, Vallejo Avenue, 14th Avenue, Chowchilla and Fairfield properties, by breaching their fiduciary duties to Debtor, Barney and Fred usurped Debtor's corporate opportunity to profit from the foreclosed properties.

152.    In the case of the Inverness property, Barney acquired the property in 2000 for assumption of a $25,047 loan.  On information and belief, Barney sold the property in 2006, without remitting any of the proceeds of the sale to Debtor.  The Insider loan on the property is still outstanding, and has never been paid by Barney.

153.    In the case of the Eden Way and Lafayette properties, Debtor transferred the properties to Barney for assumption of approximately $6.9 million in combined debt.  On information and belief, Barney never made any payments due on the loans for either property.  Yet, at the time of the transfer, Barney and/or Fred usurped Debtor's opportunity to potentially obtain a benefit by any sale of the properties in the future.  Further, Barney caused Debtor to write off the balance of the loan after the Petition Date, meaning he acquired these two properties from Debtor for no consideration at all.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 30 -

25988\2469509.7

154. When Debtor foreclosed upon the Fairfield property in April 2008, the borrower was in default on approximately $9.3 million in debt. Although the property was appraised in July 2008 at $21.5 million, Barney and/or Fred caused Debtor to transfer this valuable property to Barney's wholly-owned entity, Twin Sisters, for no consideration other than assumption of the non-recourse debt. At the time of the transfer, therefore, Barney and/or Fred usurped Debtor's opportunity to potentially obtain a benefit of more than $12 million on the sale.

155. The Chowchilla property is a 60-acre parcel with a proposed subdivision of over 300 residential lots. At the time of foreclosure, the borrower was in default on approximately $7.5 million of debt owed to Debtor. Yet Barney and/or Fred caused Debtor to transfer this valuable property to Twin Sisters for no consideration other than assumption of the nonrecourse debt, again usurping Debtor's corporate opportunity to realize a potential benefit on the gain from the sale of the property.

156. Because Twin Sisters became the owner of the Chowchilla and Fairfield properties, it (rather than Debtor) would receive any "upside" if the properties were sold for more than the amount of the debt encumbering the properties, while Debtor would be subject to all of the "downside" if the properties realized less than the secured debt.

157. Barney's and Fred's usurpation of Debtor's corporate opportunities has caused financial loss to Debtor's estate in an amount to be established according to proof.

158. The actions of each of Defendants Barney and Fred were willful, fraudulent and malicious.

159. Accordingly, the Trustee seeks judgment for compensatory and punitive damages from each of Defendants Barney Glaser and Fred Taylor in an amount to be fixed at trial

### NINTH CLAIM FOR RELIEF

**(Unjust Enrichment/Quantum Meruit – Against All Defendants)**

160. The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

161. Defendants Barney, Carolyn, L&B, Bonnie, Junior, the Glaser Educational Fund, Fred, Mary, Jill, Rhine and Mill Valley (collectively, the "Insider Claimants") have benefited

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 31 -

25988\2469509.7

1  economically at Debtor's expense by receiving substantially greater interest on loans made to
2  Debtor than the interest on loans made to Debtor by unaffiliated lenders.

3      162.    Debtor incurred interest expense on long term borrowings from the Insider
4  Claimants at rates that were materially in excess of the rates Debtor incurred on Notes Payable to
5  unaffiliated entities and, in the case of Barney and Fred, far in excess of the rates Debtor received
6  on Notes Receivable from them.  According to Debtor's year-end 2009 financial statements, the
7  average interest rate accrued on Notes Payable to unaffiliated borrowers was 6 to 7% per annum.
8  Yet, by virtue of the fact that they are insiders and Barney controlled Debtor, the Insider
9  Claimants' received interest on their investment accounts at rates of between 10% and 50% per
10  annum or more.

11     163.    With respect to Barney's investor accounts, Barney caused Debtor to make
12  excessive interest payments to himself, unrelated to any contractual obligation owed by Debtor.
13  For example, although Debtor's promissory notes to Barney generally provided for interest rates
14  of between 6% and 8% per annum, Barney received interest greatly in excess of these rates, as
15  follows:

16     • 2009:        $1,481,524        27-40%
17     • 2008:        $1,702,009        > 29%
18     • 2007:        $2,271,665        > 53%
19     • 2006:        $1,982,962        > 47%

20     164.    Further, because Barney had borrowed millions of dollars from Debtor on Insider
21  Notes Receivable with an average accrued interest rate of approximately 5% per annum, Barney
22  benefited economically by borrowing money from Debtor at 5% while effectively loaning funds
23  to Debtor through his Note Payable Account at rates between 30% and 50% per annum, thereby
24  realizing  hundreds of thousands of dollars each year (with no net investment).

25     165.    In some particularly egregious situations, Barney would borrow money from
26  Debtor at the very low interest rate of 5%, and place the money into his investment account,
27  where it would "earn" 30% to 50% or more interest.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES                                    - 32 -

166.    Defendants Barney and Fred also benefited economically at Debtor's expense by receiving "salary" and "bonus" payments to which they were not contractually entitled and for which comparable services were not rendered.  Specifically, in the two years prior to the Petition Date, Barney's investor account in Debtor was credited with $1 million in salary and bonus interest, despite no employment agreement with Debtor or other document governing compensation.  Similarly, in the four years prior to the Petition Date, Fred's investor account in Debtor was credited with $2,317,000 in salary and bonus, despite a purported annual salary of only $300,000 per year.

167.    Additionally, Debtor paid excise taxes totaling $831,597 resulting from an IRS assessment, over several years, related to Debtor's pension plan investment in investor accounts which were eventually determined to be "prohibited transactions" under the tax law.  The sole beneficiaries of Debtor's pension plan are Barney and Fred, who are liable for these tax assessments that were paid by Debtor.

168.    Defendant Twin Sisters has benefited economically at Debtor's expense by receiving transfers of the Fairfield and Chowchilla properties foreclosed upon by Debtor, with virtually no consideration other than assumption of the non-recourse loans to Debtor.  Although Twin Sisters has since reconveyed the Fairfield and Chowchilla properties back to Debtor – at the Trustee's insistence – during the time it owned the properties, Twin Sisters never made any payments owed under the loan documents and did not pay its own expenses (including property taxes), which Debtor paid on its behalf.

169.    Similarly, Barney has benefited economically at Debtor's expense by receiving transfers of the Inverness, Silver Sand, Porto Bello, Viento Way, Vallejo Avenue, 14th Avenue, Eden Way and Lafayette properties foreclosed upon by Debtor, with no consideration other than assumption of the non-recourse loans to Debtor.  Barney has not made any payments required under these loans (including principal and interest), and has caused Debtor to write off the balance owed on the Eden Way and Lafayette properties.

170.    Because Barney became the owner of the Inverness, Silver Sand, Porto Bello, Viento Way, Vallejo Avenue, 14th Avenue, Eden Way and Lafayette properties, he (rather than

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 33 -

25988\2469509.7

Debtor) receives any "upside" if the properties were sold for more than the amount of the debt encumbering the property. In the case of Eden Way and Lafayette, Barney further benefited by having the remaining debt for each property forgiven by the Debtor post-petition.

171. Defendant Glaser Educational Foundation has benefited economically at Debtor's expense by receiving direct contributions from Debtor into its investor account, and additional contributions by paper transfers between Note Payable Accounts, on which the Glaser Educational Foundation would accrue interest substantially higher than unaffiliated investors. The unearned contributions the Glaser Education Foundation received are as follows:

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/31/01 | Transfer from Barney account | $20,000 |
| 03/31/02 | Debtor contribution | 100,000 |
| 03/31/03 | Debtor contribution | 100,000 |
| 12/31/03 | Transfer from Barney & Carolyn accounts | 150,000 |
| 03/31/04 | Debtor contribution | 110,000 |
| 03/31/05 | Debtor contribution | 116,092 |
| 09/13/05 | Transfer from Carolyn account | 20,000 |
| 12/31/05 | Transfer from Carolyn account | 20,000 |
| 12/31/05 | Transfer from Barney account | 150,000 |
| 03/31/06 | Debtor contribution | 232,000 |
| 12/31/06 | Transfer from Carolyn account | 50,000 |
| 12/31/06 | Transfer from Barney account | 100,000 |
| 03/15/07 | Debtor contribution | 110,000 |
| 12/28/07 | Transfer from Barney account | 100,000 |
| 12/28/07 | Transfer from Carolyn account | 50,000 |
| 03/08/08 | Debtor contribution | 110,000 |
| 12/31/08 | Transfer from Barney account | 100,000 |
| 12/31/08 | Transfer from Carolyn account | 50,000 |
| **TOTAL** | | **$1,688,092** |

172. The Glaser Education Foundation provided no services or other benefit to Debtor in exchange for these contributions from Debtor.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 34 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 34 of 61

173.     As a result of the wrongful diversion and/or retention of Debtor's property by Defendants, Defendants have received and continue to enjoy benefits at the expense of Debtor without providing adequate compensation to Debtor.

174.     As a matter of equity and fairness, it would be unjust to allow Defendants to maintain the unjust enrichment they received at Debtor's expense.

175.     Based on the foregoing, the Trustee is entitled to damages in an amount to be determined at trial.

### TENTH CLAIM FOR RELIEF
### (Conversion – Against All Defendants)

176.     The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

177.     Debtor is the rightful owner of the Fraudulent Transfers and Constructive Fraudulent Transfers made to Insiders.  Specifically, Debtor is the rightful owner of:  (a) the excess interest credited to Insiders' investor accounts; (b) the interest due on Insider Notes Receivable for loans made to Insiders; (c) the unpaid principal on loans made to Insiders that were deemed repaid or were written off or reconveyed without consideration; and (d) the contributions made to the Glaser Educational Foundation.

178.     Defendant Insiders have possession and/or control of, and refuse to remit Debtor's property including the excess interest credited to Insiders' investor accounts, the interest due on Insider Notes Receivable, the unpaid principal that was never paid, and the contributions made to the Glaser Educational Foundation.

179.     The Trustee has made a demand for return of Debtor's estate property, including the excess interest credited to Insiders' investor accounts, the interest due on Insider Notes Receivable, the unpaid principal that was never paid, and the contributions made to the Glaser Educational Foundation, which demand the Insiders have refused.

180.     Accordingly, the Insiders have acted without authorization in exercising dominion or a right of ownership over Debtor's estate property, including the excess interest credited to

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 35 -

25988\2469509.7

Case: 11-03061     Doc# 1     Filed: 03/11/11     Entered: 03/11/11 19:07:41     Page 35 of 61

Insiders' investor accounts, the interest due on Insider Notes Receivable, the unpaid principal that was never paid, and the contributions made to the Glaser Educational Foundation.

181.    By reason of the foregoing, the Trustee is entitled to damages for the Insiders' conversion of estate property in an amount to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF

**(Turnover of Property of the Estate Under Bankruptcy Code § 542(a) – Against Defendants Barney Glaser and Twin Sisters, LLC)**

182.    The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

183.    Prior to the Petition Date, Debtor loaned Barney $400,000 for his purchase of 63 Meadow Drive, and $189,191 for his purchase of 35 Dorset Lane.  Despite that neither of these loans was paid by Barney, Barney caused Debtor to reconvey the deeds of trust on these properties on January 12, 2010.

184.    The value of the deeds of trust on the Meadow Drive and Dorset Lane properties is of greater than inconsequential value.

185.    The Trustee may use, sell or lease such property under 11 U.S.C. § 363.

186.    The Trustee has demanded, and does hereby again demand, that Barney turnover to the Trustee the property of the estate improperly conveyed to him, and which he is currently improperly continuing to hold.

187.    Accordingly, the Trustee is entitled to turnover of the estate property from Barney pursuant to 11 U.S.C. § 542(a), or an amount sufficient to compensate Debtor's estate for the improper transfer of estate property.

188.    In 2008, Debtor foreclosed on the Chowchilla and Fairfield properties on which it held security interests, and caused these properties to be transferred to Defendant Twin Sisters.

189.    Debtor transferred its interest in the Chowchilla and Fairfield properties to Twin Sisters for no consideration, other than Twin Sister's assumption of the non-recourse debt secured by the property owed to Debtor.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 36 -

25988\2469509.7

190. During the time that Twin Sisters owned the Chowchilla and Fairfield properties, Twin Sisters entered into lease and license agreements with third parties regarding the use of the Chowchilla and Fairfield properties, which generated rents and royalties for Twin Sisters, but Twin Sisters has not shared the amounts received therefrom with Debtor.

191. The value of such rents and royalties is of greater than inconsequential value.

192. The Trustee may use, sell or lease such property under 11 U.S.C. § 363.

193. The Trustee has demanded, and does hereby again demand, that Twin Sisters turnover to the Trustee the property of the estate improperly conveyed to it, and which it is currently improperly continuing to hold.

194. The Trustee is entitled to turnover by Twin Sisters of all rents, royalties, and other lease or license payments received from third parties by Twin Sisters for use of Debtor's estate property pursuant to 11 U.S.C. § 542(a).

195. Accordingly, the Trustee requests judgment requiring Twin Sisters to turnover to the Trustee such property.

196. Further, Twin Sisters never made any payments owed under the loan documents (including debt service, late fees and property taxes) during the time it owned the Chowchilla and Fairfield properties, and Debtor never sought to enforce such obligations. In addition, Debtor paid the expenses related to the Chowchilla and Fairfield properties while Twin Sisters owned them.

197. The accrued but unpaid interest owed to Debtor and the expenses Debtor paid on Twin Sisters' behalf are property of Debtor's estate.

198. The value of the property is of greater than inconsequential value.

199. The Trustee may use, sell or lease the estate property under 11 U.S.C. § 363.

200. The Trustee has demanded, and does hereby again demand, that Twin Sisters turnover to the Trustee the property of the estate improperly conveyed to it, and which it is currently improperly continuing to hold.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

25988\2469509.7

Case: 11-03061   Doc# 1   Filed: 03/11/11   Entered: 03/11/11 19:07:41   Page 37 of 61

201. Accordingly, the Trustee is entitled to turnover of the estate property from Twin Sisters pursuant to 11 U.S.C. § 542(a), or an amount sufficient to compensate Debtor's estate for the improper transfer of estate property.

## TWELFTH CLAIM FOR RELIEF

**(Turnover of Property of the Estate Under Bankruptcy Code § 542(b) – Against Defendants Barney Glaser, Fred Taylor and Twin Sisters, LLC)**

202. The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

203. As described more fully above, prior to the Petition Date, Debtor made numerous loans to Insider Borrowers (Barney, Fred and Twin Sisters), including those identified in Exhibit 5.

204. Each of the loans to the Insider Borrowers required the Insider Borrower to pay interest to Debtor of not less than five percent (5%) per annum on the principal outstanding.

205. On information and belief, as of the date of this Complaint, the Insider Borrowers owed the at least the following principal and interest to Debtor for their Insider loans:

**Barney Glaser**

| | | |
|---|---|---|
| • | 7022 Evans Interest | $ 29,257 |
| • | 830605 Catalpa1 | 29,648 |
| • | 830605 Catalpa1 Interest | 37,087 |
| • | 830613 Caltalp2 | 83,428 |
| • | 830613 Catalpa2 Interest | 113,757 |
| • | 8917 Weiss | 101,608 |
| • | 8917 Weiss Interest | 154,020 |
| • | 9034 Haye-Webb Interest | 215,462 |
| • | 9035 Kekaha Interest | 144,677 |
| • | 9036 Evelyn | 174,997 |
| • | 9036 Evelyn Interest | 356,642 |
| • | 90361 Evelyn Remodel | 1,404,725 |
| • | 90361 Evelyn Remodel Interest | 312,531 |
| • | 9038 Gould | 55,715 |
| • | 9105 Baker Interest | 129,496 |
| • | 92xx10 | 25,047 |
| • | 9226 Roque Mora | 252,076 |
| • | 9226 Roque Mora Interest | 300,324 |
| • | 9230 Silver Sand | 244,602 |

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 38 -

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 38 of 61

- 9230 Silver Sand Interest ............................................ 72,325
- 9233 Lae ............................................................. 35,644
- 9233 Lae Interest ................................................... 193,898
- 9330 Bodega Wrap Interest .......................................... 147,756
- 9336 Porto Bello ................................................... 111,678
- 9351 Yates Interest ................................................. 12,000
- 93511 Yates II Interest .............................................. 9,520
- 9353 Hedenskoog Interest ............................................... 660
- 9357 Yates Kekaha Interest .......................................... 43,810
- 9359 42 Meadow Interest ............................................. 11,586
- 9360 21 Diamond Head Interest ........................................ 3,256
- 9361 Mini Cooper .................................................... 3,235
- 9362 Lafayette ..................................................... 344,497
- 9362 Lafayette Interest ............................................. 282,430
- 9363 Lafayette Sale Interest ........................................ 207,475
- 9532 Home Refinance Interest ...................................... 1,037,137
- 9984 Eden Way ...................................................... 585,833
- 9984 Eden Way Interest ............................................. 824,230
- Land loan ........................................................... 45,000
- Land Loan Interest ................................................... 8,700
- House line2 ......................................................... <u>76,281</u>

**TOTAL:**  **$8,222,050**

**Barney Glaser and Fred Taylor**:

- 9032 Divisadero ................................................... $ 230,000
- 9033 Divisadero Interest ............................................ 685,332
- Parkman House ...................................................... 137,751
- Tricity Loan Interest ............................................... <u>395,548</u>

**TOTAL:**  **$1,448,631**

**Twin Sisters**:

- 94 Brun (Chowchilla) Interest (5/12/08 – 11/4/10) ............... $2,061,511
- 120 Brun (Chowchilla) Interest (5/12/08 – 11/4/10) .............. 1,029,294
- 110 Cousins (Fairfield) Interest (5/8/08 – 11/4/10) ............. 1,876,890
- 111 Cousins (Fairfield) Late Fees (5/8/08 – 11/4/10) ............... 56,626
- 111 Cousins (Fairfield) Interest (5/8/08 – 11/4/10) .............. <u>566,255</u>

**TOTAL:**  **$5,590,576**

206. Each of the above debts owed by the Insider Borrowers is property of the estate.

207. Each of the above debts is matured, payable on demand, or payable on order.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 39 -

25988\2469509.7

208. The Trustee has demanded, and does hereby again demand, that Barney, Fred and Twin Sisters pay such debts to the Trustee, which the Insider Borrowers have refused to do.

209. Accordingly, the Trustee is entitled to turnover of the estate property from Barney, Fred and Twin Sisters pursuant to 11 U.S.C. § 542(b), or an amount sufficient to compensate Debtor's estate for the debts owed to it.

## THIRTEENTH CLAIM FOR RELIEF

**(Equitable Subordination Under Bankruptcy Code § 510(c)– Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie Glaser, Barney Glaser Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational Foundation, Andrew Rhine and Mill Valley Financial Corporation)**

210. The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

211. The Insider Claimants have each filed a claim or had a claim scheduled in the Bankruptcy Case.

212. Each of the Insider Claimants has engaged in inequitable conduct, including, but not limited to, arranging for excessive interest accruals on their Note Payable Accounts, arranging for unearned credits or deposits to be made to their Note Payable Accounts, causing Debtor to pay personal expenses, arranging for loans from Debtor on terms more favorable than those provided to unrelated borrowers, and/or usurping Debtor's corporate opportunities.

213. Such misconduct conferred an unfair advantage on the Insider Claimants, while injuring Debtor, and necessarily, its creditors, based on Debtor's inability to fully satisfy all creditor claims.

214. Subordinating the Insider Claimants' claims would not be inconsistent with the Bankruptcy Code. Rather, it would be consistent with principles of equity and fair distribution in the Bankruptcy Code, by preventing Insiders from using their control over Debtor to benefit themselves personally at the expense of Debtor and its unaffiliated creditors.

215. Accordingly, pursuant to 11 U.S.C. § 510(c), any and all claims filed by the Insider Claimants, including without limitation proofs of claim nos. 18, 20, 21, 22, 28, 34-42, 58, 111, 124-126, 136, 139, and any scheduled claims of Defendants, should be subordinated.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 40 -

25988\2469509.7

216. The Trustee therefore requests a judgment against each of the Insider Claimants subordinating his, her or its claim to the claims of all other non-insider creditors.

## FOURTEENTH CLAIM FOR RELIEF

**(Disallowance of Claims Under Bankruptcy Code §502(d) – Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie Glaser, Barney Glaser, Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational Foundation, Andrew Rhine and Mill Valley Financial Corporation)**

217. The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

218. The Insider Claimants have each filed a claim or had a claim scheduled in the Bankruptcy Case.

219. As set forth above, property is recoverable from the Insider Claimants under 11 U.S.C. §§ 542 and 550 and the Insider Claimants are transferees of transfers avoidable under 11 U.S.C. §§ 544, 547, 548 and 549. The Insider Claimants have not paid the amount or turned over property for which the Insider Claimants are liable to Debtor or the Trustee.

220. Accordingly, pursuant to 11 U.S.C. § 502(d), any and all claims filed by the Insider Claimants, including without limitation proofs of claim nos. 18, 20, 21, 22, 28, 34-42, 58, 111, 124-126, 136, 139, and any scheduled claims of the Insider Claimants, must be disallowed.

221. The Trustee therefore requests that, until such time as the Insider Claimants return the avoidable transfers and recoverable property to the Trustee, the Insider Claimants' claims, whether previously or subsequently schedule, filed or otherwise asserted in Debtor's Chapter 11 or Chapter 7 cases, should be disallowed in their entirety.

## FIFTEENTH CLAIM FOR RELIEF

**( For Declaratory Relief That Insiders' Investments In Debtor Be Recharacterized As Equity)**

222. The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 41 -

25988\2469509.7

Case: 11-03061     Doc# 1     Filed: 03/11/11     Entered: 03/11/11 19:07:41     Page 41 of
61

223.   Prior to the Petition Date, each of the Insider Claimants made an investment in Debtor by contributing money to an investor accounts that would earn the Insider Claimant a specified rate of return.

224.   On information and belief, the Trustee alleges that each Insider Claimants' investment was in actuality a contribution of equity in Debtor based on several factors, including, without limitation, that Debtor's transactions with the Insider Claimants were not characteristic of an arm's length negotiation (particularly in light of the higher rate of return paid to Insiders than to non-insiders); Debtor's debts to Insiders as reflected through their investor accounts  lacked actual maturity dates (notwithstanding the purported maturity dates on certain promissory notes issued to Insider Claimants by Debtor); Debtor was thinly capitalized, and repayment of debts to Insider Claimants hinged on Debtor's profitability; Barney was the sole shareholder of Debtor and related to or affiliated with the other Insider Claimants; Barney and Fred were Debtor's sole management and in total control of Debtor; and Barney assured non-Insider creditors that their claims would be paid ahead of Insiders' claims.

225.   On information and belief, the Insider Claimants contest the position of the Trustee set forth in the preceding paragraph and instead assert, on grounds or bases unknown, that their investments in Debtor were actually loans for which they have a creditor claim.

226.   A present and actual controversy has therefore arisen and exists between the Trustee and the Insider Claimants regarding whether the Insider Claimants' investor accounts should be treated as loans to Debtor or equity interests.

227.   Accordingly, the Trustee requests judgment against each of the Insider Claimant Defendants for a declaration of rights that, among other things, the Insider Claimants' claims against Debtor be recharacterized as equity interests in Debtor.

## SIXTEENTH CLAIM FOR RELIEF

**( For Declaratory Relief That Defendant Barney Glaser is the Alter Ego of Debtor)**

228.   The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 42 -

25988\2469509.7

229.     The Trustee alleges that Barney, president and sole shareholder of Debtor, is the alter ego of Debtor, because at all relevant times, Barney failed to respect the corporate separateness of Debtor by, among other things, pervasively using corporate funds to pay the Insiders' personal expenses, commingling funds and accounts between Debtor and the Insiders, and self-dealing by causing Debtor to entering into business arrangements with Insiders on terms more favorable than those offered to unaffiliated parties.

230.     The Trustee alleges that Barney's actions resulted in an undercapitalization of Debtor, and the diversion of Debtor's tangible and intangible assets to his own uses, and that legal, contractual, public policy, and equitable grounds therefore exist for disregarding Debtor as a corporate entity.

231.     On information and belief, Barney contests the position of the Trustee set forth in the preceding two paragraphs and instead asserts, on grounds or bases unknown, that he is not the alter ego of Debtor.

232.     A present and actual controversy has therefore arisen and exists between the Trustee and Barney regarding whether Debtor's corporate existence should be disregarded and Barney treated as its alter ego.

233.     Accordingly, the Trustee requests judgment against Defendant Barney Glaser for a declaration of rights that, among other things, Barney is an alter ego of Debtor and holding him liable for damages in an amount to be proven at trial.

## OBJECTIONS TO CLAIMS

234.     The Trustee incorporates all the above paragraphs of this Complaint as if fully set forth herein.

235.     Pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3007(b), the Trustee hereby objects to the each of the Insiders Claimants' claims as follows:

**Barney G. Glaser**

236.     Defendant Barney Glaser filed Proof of Claim No. 34, in the amount of $3,928,827.01, and Proof of Claim No. 58, in the amount of $7,095,369, in the Bankruptcy Case.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 43 -

35988\2469509.7

237.    Substantial factual and legal issues prevent the allowance of Claim Nos. 34 and 58, which are without merit.

238.    Claim No. 34 is allegedly based on a promissory note dated January 1, 2009, (substantially past the time when Barney was aware of Debtor's failing financial state), and an unexplained "pension distr,n".  Barney fails to include adequate documentation or evidentiary support for his claim and, to the contrary, as described more fully in this Complaint, Barney provided no or insufficient consideration for the Debtor's alleged obligations on which Claim No. 34 is apparently based, (including, without limitation, excess interest, excess salary and excess pension contributions he caused Debtor to pay or accrue to him).

239.    Accordingly, the Trustee hereby objects to Claim No. 34 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

240.    The Trustee further objects to Claim No. 34 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated.  *See In re Holm,* 931 F.2d 620, 622 (9th Cir. 1991) (Only when claim "allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim."); *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 565 n. 4 (Bankr. N.D. Cal. 2002).  The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

241.    Based on the foregoing, Claim No. 34 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

242.    To the extent that Claim No. 34 is not disallowed in its entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 44 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 44 of 61

243. Claim No. 58 is allegedly based on a guaranty (pursuant to a Commercial Guaranty dated September 14, 2006 and a Reaffirmation of Guaranty Obligations dated October 20, 2009) of an unsecured loan made to the Debtor by Bank of Marin, as reflected by a Promissory Note, dated October 20, 2009 (about one month prior to the Petition Date) in the principal amount of $7,000,000 (the "Bank Debt"). The claim is apparently based on reimbursement obligations allegedly owed to Barney by the Debtor based on Barney's payments on the Bank Debt. However, Barney fails to include any documentary or evidentiary support for his claim that he has paid any of the Bank Debt on behalf of Debtor or that he is entitled to reimbursement for payment of any Bank Debt.

244. Accordingly, the Trustee hereby objects to Claim No. 58 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law pursuant to Bankruptcy Code Section 502(b)(1).

245. The Trustee further objects to Claim No. 58 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated. The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

246. Based on the foregoing, Claim No. 58 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

247. The Trustee further objects to Claim No. 58 under Bankruptcy Code Section 502(e)(1)(B), as a contingent reimbursement claim of a co-debtor.

248. Claim No. 58 is a claim for reimbursement by Barney, who is liable with the Debtor (as a guarantor) on the Bank Debt (which claim Bank of Marin has asserted against the Debtor pursuant to Claim No. 54), which is contingent as to all amounts asserted therein except for $95,369.72 (the amount that Claimant has actually paid on the Bank Debt according to the Claim).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 45 -

25988\2469509.7

Case: 11-03061   Doc# 1   Filed: 03/11/11   Entered: 03/11/11 19:07:41   Page 45 of 61

1    249.    Accordingly, Claim No. 58 should be disallowed as a contingent reimbursement

2    claim pursuant to Section 502(e)(1)(B), except for the $95,369.72 amount allegedly paid by

3    Claimant to Bank of Marin (which amount is subject to disallowance for the reasons set forth in

4    this Complaint).

5    250.    To the extent that Claim No. 58 is not disallowed in its entirety, the Trustee

6    expressly reserves the right to supplement his objections or file additional objections to that claim

7    (including following additional investigation and discovery).

8    **Carolyn B. Glaser**

9    251.    Defendant Carolyn Glaser filed Proof of Claim No. 35, in the amount of

10   $436,599.47, Proof of Claim No. 37 in the amount of $241,326.10, Proof of Claim No. 38, in the

11   amount of $1,561,049.53, and Proof of Claim No. 39, in the amount of $2,452.57, in the

12   Bankruptcy Case.

13   252.    Substantial factual and legal issues prevent the allowance of Claim Nos. 35, 37, 38

14   and 39, which are without merit.

15   253.    Claim No. 35 is allegedly based on a promissory note dated February 1, 2008,

16   payable to Carolyn Bear Glaser, IRA Rollover, Entrust Administration, Inc., trustee.  Carolyn

17   fails to include adequate documentation or evidentiary support for this claim and, to the contrary,

18   as described more fully in this Complaint, Carolyn provided no or insufficient consideration for

19   the Debtor's alleged obligations on which Claim No. 35 is apparently based (including, without

20   limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or

21   accrue to her).

22   254.    Accordingly, the Trustee hereby objects to Claim No. 35 on the grounds that such

23   claim is unenforceable against the Debtor and property of the Debtor, under any agreement or

24   applicable law for a reason other than because such claim is contingent or unmatured, pursuant to

25   Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

26   255.    The Trustee further objects to Claim No. 35 because the claim does not contain

27   adequate documentation to establish a prima facie claim, and the Debtor's books and records do

28   not support the claim in the amount stated.  The filing of this claim does not comply with

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 46 -

25988\2469509.7

1    applicable bankruptcy rules, and under circumstances such as these, where the objecting party

2    (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to

3    disallow the claim.

4           256.    The Trustee further objects to Claim No. 35 because the promissory note upon

5    which the claim is allegedly based is not payable to Claimant Carolyn Glaser.

6           257.    Based on the foregoing, Claim No. 35 should be disallowed in its entirety pursuant

7    to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

8           258.    To the extent that Claim No. 35 is not disallowed in its entirety, the Trustee

9    expressly reserves the right to supplement his objections or file additional objections to that claim

10   (including following additional investigation and discovery).

11          259.    Claim Nos. 37, 38 and 39 are allegedly based on promissory notes dated January 1,

12   2009 (substantially after the time in which Carolyn had Insider knowledge of the failing state of

13   Debtor), payable to Carolyn Bear Glaser.  Carolyn fails to include adequate documentation or

14   evidentiary support for these claims and, to the contrary, as described more fully in this

15   Complaint, Carolyn provided no or insufficient consideration for the Debtor's alleged obligations

16   on which Claim Nos. 37, 38 and 39 are apparently based (including, without limitation, excess

17   interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to her).

18          260.    Accordingly, the Trustee hereby objects to Claim Nos. 37, 38 and 39 on the

19   grounds that such claims are unenforceable against the Debtor and property of the Debtor, under

20   any agreement or applicable law for a reason other than because such claims are contingent or

21   unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

22          261.    The Trustee further objects to Claim Nos. 37, 38 and 39 because none of these

23   claims contain adequate documentation to establish a prima facie claim, and the Debtor's books

24   and records do not support the claims in the amount stated.  The filing of these claims does not

25   comply with applicable bankruptcy rules, and under circumstances such as these, where the

26   objecting party (the Trustee) is unable to determine the validity of the claims, this non-

27   compliance is a basis to disallow the claims.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES                                          - 47 -                                   25988\2469509.7

262. Based on the foregoing, Claim Nos. 37, 38 and 39 should be disallowed in their entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

263. To the extent that Claim Nos. 37, 38 and 39 are not disallowed in their entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

**Barney and Carolyn Glaser**

264. Defendants Barney and Carolyn Glaser filed a joint Proof of Claim No. 42 on behalf of "Glaser Joint Account," in the amount of $2,642,125.25, in the Bankruptcy Case.

265. Substantial factual and legal issues prevent the allowance of Claim No. 42, which is without merit.

266. Claim No. 42 is allegedly based on a promissory note dated January 1, 2009 (substantially past the time when Claimants had Insider knowledge of the failing state of Debtor), payable to Barney and Carolyn Glaser. Barney and Carolyn fail to include adequate documentation or evidentiary support for this claim and, to the contrary, as described more fully in this Complaint, Barney and Carolyn provided no or insufficient consideration for the Debtor's alleged obligations on which Claim No. 42 is apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to their account).

267. Accordingly, the Trustee hereby objects to Claim No. 42 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

268. The Trustee further objects to Claim No. 42 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated. The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 48 -

25988\2469509.7

1  269.  Based on the foregoing, Claim No. 42 should be disallowed in its entirety pursuant

2  to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

3  270.  To the extent that Claim No. 42 is not disallowed in its entirety, the Trustee

4  expressly reserves the right to supplement his objections or file additional objections to that claim

5  (including following additional investigation and discovery).

6  **Lerner and Bear, Inc.**

7  271.  Defendant Lerner and Bear filed Proof of Claim No. 36 in the amount of

8  $1,119,895.45, and Proof of Claim No. 41, in the amount of $681,622.63, in the Bankruptcy

9  Case.

10  272.  Substantial factual and legal issues prevent the allowance of Claim Nos. 36 and 41,

11  which are without merit.

12  273.  Claim Nos. 36 and 41 are allegedly based on promissory notes dated January 1,

13  2009 (substantially past the time when L&B had Insider knowledge of the failing state of Debtor),

14  payable to Lerner and Bear, Inc.  L&B failed to include adequate documentation or evidentiary

15  support for this claim and, to the contrary, as described more fully in this Complaint, L&B

16  provided no or insufficient consideration for the Debtor's alleged obligations on which Claim

17  Nos. 36 and 41 are apparently based (including, without limitation, excess interest and excess

18  contributions Barney and/or Fred caused Debtor to pay or accrue to L&B's accounts).

19  274.  Accordingly, the Trustee hereby objects to Claim Nos. 36 and 41 on the grounds

20  that such claims are unenforceable against the Debtor and property of the Debtor, under any

21  agreement or applicable law for a reason other than because such claim is contingent or

22  unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

23  275.  The Trustee further objects to Claim Nos. 36 and 41 because the claims do not

24  contain adequate documentation to establish a prima facie claim, and the Debtor's books and

25  records do not support the claims in the amount stated.  The filing of these claims does not

26  comply with applicable bankruptcy rules, and under circumstances such as these, where the

27  objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance

28  is a basis to disallow the claim.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 49 -

25988\2469509.7

276. Based on the foregoing, Claim Nos. 36 and 41 should be disallowed in their entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

277. To the extent that Claim Nos. 36 and 41 are not disallowed in their entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

**Bonnie Glaser**

278. Defendant Bonnie Glaser filed Proof of Claim No. 111, in the amount of $1,086,339.74 in the Bankruptcy Case.

279. Substantial factual and legal issues prevent the allowance of Claim No. 111, which is without merit.

280. Claim No. 111 is allegedly based on a promissory note dated July 10, 1980, for $1,500 payable to Bonnie Glaser. Bonnie fails to include adequate documentation or evidentiary support for this claim and, to the contrary, as described more fully in this Complaint, Bonnie provided no or insufficient consideration for the Debtor's alleged obligations on which Claim No. 111 is apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to her).

281. Accordingly, the Trustee hereby objects to Claim No. 111 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

282. The Trustee further objects to Claim No. 111 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated. The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

283. Based on the foregoing, Claim No. 111 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 50 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 50 of 61

1    284.    To the extent that Claim No. 111 is not disallowed in its entirety, the Trustee

2    expressly reserves the right to supplement his objections or file additional objections to that claim

3    (including following additional investigation and discovery).

4    **Jillian Rhine**

5    285.    Defendant Jillian Rhine filed Proof of Claim No. 22, in the amount of $29,427.06

6    in the Bankruptcy Case.

7    286.    Substantial factual and legal issues prevent the allowance of Claim No. 22, which

8    is without merit.

9    287.    Claim No. 22 is allegedly based on a promissory note dated September 4, 2008,

10   payable to PENSCO Trust Company Custodian FBO Jillian Rhine IRA Rollover, account number

11   RH1AP.  Jill fails to include adequate documentation or evidentiary support for this claim and, to

12   the contrary, as described more fully in this Complaint, Jill provided no or insufficient

13   consideration for the Debtor's alleged obligations on which Claim No. 22 is apparently based

14   (including, without limitation, excess interest and excess contributions Barney and/or Fred caused

15   Debtor to pay or accrue to her).

16   288.    Accordingly, the Trustee hereby objects to Claim No. 22 on the grounds that such

17   claim is unenforceable against the Debtor and property of the Debtor, under any agreement or

18   applicable law for a reason other than because such claim is contingent or unmatured, pursuant to

19   Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

20   289.    The Trustee further objects to Claim No. 22 because the claim does not contain

21   adequate documentation to establish a prima facie claim, and the Debtor's books and records do

22   not support the claim in the amount stated.  The filing of this claim does not comply with

23   applicable bankruptcy rules, and under circumstances such as these, where the objecting party

24   (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to

25   disallow the claim.

26   290.    The Trustee further objects to Claim No. 22 because the promissory note upon

27   which the claim is allegedly based is not payable to Claimant Jillian Rhine.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 51 -

25988\2469509.7

Case: 11-03061   Doc# 1   Filed: 03/11/11   Entered: 03/11/11 19:07:41   Page 51 of
61

291. Based on the foregoing, Claim No. 22 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

292. To the extent that Claim No. 22 is not disallowed in its entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

**Andrew Rhine**

293. Defendant Andrew Rhine filed Proof of Claim No. 18, in the amount of $509,780.41, and on behalf of "Rhine IRA" filed Proof of Claim No. 20 in the amount of $24,136.29, and Proof of Claim No. 21, in the amount of $136,226.76, in the Bankruptcy Case.

294. Substantial factual and legal issues prevent the allowance of Claim Nos. 18, 20 and 21, which are without merit.

295. Claim No. 18 is allegedly based on a promissory note dated October 14, 1999, in the amount of $1,416,000 from Barney and Carolyn Glaser, payable to Andrew Rhine, and an Agreement re Assignment of Obligation Under Promissory Note between Barney and Carolyn Glaser, as Assignors, and Debtor, as Assignee. Rhine fails to include adequate documentation or evidentiary support for this claim and, to the contrary, as described more fully in this Complaint, Rhine provided no or insufficient consideration for the Debtor's alleged obligations on which Claim No. 18 is apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to him, and that Barney and Carolyn did not pay Debtor the required consideration for the Assignment).

296. Accordingly, the Trustee hereby objects to Claim No. 18 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any valid agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)). The promissory note upon which Claim No. 18 is allegedly based is not an obligation of the Debtor, and the purported assignment to Debtor of Barney's and Carolyn's obligation to Rhine is unenforceable for lack of consideration.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 52 -

25988\2469509.7

Case: 11-03061   Doc# 1   Filed: 03/11/11   Entered: 03/11/11 19:07:41   Page 52 of 61

297.    The Trustee further objects to Claim No. 18 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated.  The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

298.    The Trustee further objects to Claim No. 18 because the promissory note upon which the claim is allegedly based is not payable by Debtor.

299.    Based on the foregoing, Claim No. 18 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

300.    To the extent that Claim No. 18 is not disallowed in its entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

301.    Claim Nos. 20 and 21 are allegedly based on promissory notes dated June 4, 2008, and June 11, 2008, respectively, both payable to PENSCO Trust Company Custodian FBO Andrew Rhine IRA Rollover, account number RH1AK.  Rhine fails to include adequate documentation or evidentiary support for these claims and, to the contrary, as described more fully in this Complaint, Rhine provided no or insufficient consideration for the Debtor's alleged obligations on which Claim Nos. 20 and 21 are apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to him).

302.    Accordingly, the Trustee hereby objects to Claim Nos. 20 and 21 on the grounds that such claims are unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claims are contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

303.    The Trustee further objects to Claim Nos. 20 and 21 because neither of these claims contains adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claims in the amount stated.  The filing of these claims does not

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 53 -

1  comply with applicable bankruptcy rules, and under circumstances such as these, where the

2  objecting party (the Trustee) is unable to determine the validity of the claims, this non-

3  compliance is a basis to disallow the claims.

4      304.    The Trustee further objects to Claim Nos. 20 and 21 because the promissory notes

5  upon which the claims are allegedly based are not payable to Claimant Andrew Rhine.

6      305.    Based on the foregoing, Claim Nos. 20 and 21 should be disallowed in their

7  entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

8      306.    To the extent that Claim Nos. 20 and 21 are not disallowed in their entirety, the

9  Trustee expressly reserves the right to supplement his objections or file additional objections to

10 that claim (including following additional investigation and discovery).

11 **Fred Taylor**

12     307.    Defendant Fred Taylor filed Proof of Claim No. 136 in the Bankruptcy Case for

13 $2,958,396.99, of which he claimed that $59,950 was entitled to priority under Bankruptcy Code

14 Section 507(a), plus an unliquidated sum for "Indemnification" and "Attorneys fees' and costs."

15     308.    Substantial factual and legal issues prevent the allowance of Claim No. 136, which

16 is without merit.

17     309.    Claim No. 136 is based on an alleged Revolving Promissory Note, dated April 1,

18 2009 (substantially past the time when Fred was aware of Debtor's failing financial state), on

19 which $2,842,896.99 was allegedly due and owing as of the Petition Date, plus $66,500 in

20 "Unpaid Compensation" and $49,000 in "Pension Contribution" as of the Petition Date.  Fred

21 fails to include adequate documentation or evidentiary support for this claim, including the

22 alleged promissory note or an employment agreement evidencing his entitlement to $66,500 in

23 compensation and an additional $49,000 in a pension contribution.  To the contrary, as described

24 more fully in this Complaint, Fred provided no or insufficient consideration for the Debtor's

25 alleged obligations on which Claim No. 136 is apparently based (including, without limitation,

26 excess interest, excess salary and excess pension contributions Barney and/or Fred caused Debtor

27 to pay or accrue to his investor account, making the claim based on promissory note illusory, and

28 no or insufficient consideration for the alleged unpaid compensation and pension contribution).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 54 -

25988\2469509.7

310. Accordingly, the Trustee hereby objects to Claim No. 136 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

311. The Trustee further objects to Claim No. 136 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated. The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

312. Based on the foregoing, Claim No. 136 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

313. Claim No. 136 also asserts claims for unliquidated amounts of indemnification obligations and attorneys' fees and costs. This claim is apparently based on indemnification obligations allegedly owed to Fred by the Debtor based on California Labor Code Section 2802, and Fred's rights to indemnification for legal and other costs associated with litigation involving Debtor, including this Bankruptcy Case. However, Fred fails to include any documentary or evidentiary support for his claim that he has incurred any indemnifiable expenses or that he is entitled to reimbursement for payment of any legal expenses.

314. Accordingly, the Trustee further objects to Claim No. 136 under Bankruptcy Code Section 502(e)(1)(B), as a contingent reimbursement claim of a co-debtor, and Claim No. 136 should be disallowed as a contingent reimbursement claim pursuant to Section 502(e)(1)(B).

315. Fred also asserts that $10,950 of Claim No. 136 is entitled to priority as wages, salaries or commissions under Bankruptcy Code Section 507(a)(4), and that $49,000 is entitled to priority as a claim for contributions to an employee benefit plan under Bankruptcy Code Section 507(a)(5).

316. To the extent that Claim No. 136 is not disallowed in its entirety, the Trustee objects to the priority treatment of any of the allowed amount of Claim No. 136. Fred has failed

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 55 -

25988\2469509.7

to provide adequate documentation or evidentiary support for his claim that (1) he was entitled to any wages, much less the wages claimed, (2) he was covered by any defined employee pension plan, (3) even if he was covered by a defined benefit plan, he was entitled to a pension contribution of $49,000, or (4) any other employees were covered by such plan.

317.    Based on the foregoing, the Trustee further objects to Claim No. 136 under Bankruptcy Code Section 507(a), as not entitled to any priority, and Claim No. 136 should be disallowed as a priority claim pursuant to Section 507(a)(4) and 507(a)(5)(B).

318.    To the extent that any portion of Claim No. 136 is entitled to priority pursuant to Bankruptcy Code Sections 507(a)(4) or 507(a)(5), the amount of such priority claim should be reduced pursuant to the limits contained in those statutes.

319.    To the extent Claim No. 136 is not disallowed in its entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

**Mary Taylor Seibel**

320.    Defendant Mary Catherine Seibel filed Proof of Claim No. 124, in the amount of $275,469.68, Proof of Claim No. 125 in the amount of $237,691.99, Proof of Claim No. 126, in the amount of $140,022.75, and Proof of Claim No. 139, in the amount of $237,691.99, in the Bankruptcy Case.

321.    Substantial factual and legal issues prevent the allowance of Claim Nos. 124, 125, 126 and 139, which are without merit.

322.    Each of Claim Nos. 124, 125, 126 and 139 is allegedly based on "money loaned," although no description or supporting information was provided to any of the proofs of claim. Mary fails to include adequate documentation or evidentiary support for this claim and, to the contrary, as described more fully in this Complaint, Mary provided no or insufficient consideration for the Debtor's alleged obligations on which Claim Nos. 124, 125, 126 and 139 are apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to her).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 56 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 56 of 61

323.    Accordingly, the Trustee hereby objects to Claim Nos. 124, 125, 126 and 139 on the grounds that such claims are unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

324.    The Trustee further objects to Claim Nos. 124, 125, 126 and 139 because the claims do not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claims in the amount stated. The filing of these claims does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

325.    Based on the foregoing, Claim Nos. 124, 125, 126 and 139 should be disallowed in their entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

326.    Claim No. 139 is also apparently a duplicate claim to Claim No. 125. Although neither proof of claim contains any supporting documentation or information, both identify Mary Catherine Seibel as the creditor, Mary Catherine Seibel and John V. Seibel as the name and address where notices should be sent, $237,691.99 as the amount of the claim, and Account 201 as the number by which creditor identifies debtor. Neither Proof of Claim indicates that it amends any other claim.

327.    Accordingly, the Trustee further objects to Claim No. 139 as duplicative of Claim No. 125.

328.    Based on the foregoing, Claim No. 139 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor, to the extent not otherwise disallowed as without adequate support or otherwise unenforceable.

329.    To the extent that Claim Nos. 124, 125, 126 and 139 are not disallowed in their entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 57 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 57 of 61

**Glaser Educational Foundation**

330.   Defendant Glaser Educational Foundation filed Proof of Claim No. 40, in the amount of $39,269.11, in the Bankruptcy Case.

331.   Substantial factual and legal issues prevent the allowance of Claim No. 40, which is without merit.

332.   Claim No. 40 is allegedly based on a promissory note dated January 1, 2009 (substantially past the time when Glaser Educational Foundation had Insider knowledge of the failing state of Debtor), payable to Glaser Educational Foundation.  Glaser Educational Foundation failed to include adequate documentation or evidentiary support for this claim and, to the contrary, as described more fully in this Complaint, Glaser Educational Foundation provided no or insufficient consideration for the Debtor's alleged obligations on which Claim No. 40 is apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to its account).

333.   Accordingly, the Trustee hereby objects to Claim No. 40 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

334.   The Trustee further objects to Claim No. 40 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated.  The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

335.   Based on the foregoing, Claim No. 40 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

336.   To the extent that Claim No. 40 is not disallowed in its entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

25988\2469509.7

**Mill Valley Financial Corporation**

337.  Defendant Mill Valley Financial Corporation filed Proof of Claim No. 28, in the amount of $4,576,149.26, in the Bankruptcy Case.

338.  Substantial factual and legal issues prevent the allowance of Claim No. 28, which is without merit.

339.  Claim No. 28 is allegedly based on a promissory note dated April 29, 1991, in the original principal amount of $41,968, payable to Mill Valley Financial Corporation.  Mill Valley failed to include adequate documentation or evidentiary support for this claim and, to the contrary, as described more fully in this Complaint, Mill Valley provided no or insufficient consideration for the Debtor's alleged obligations on which Claim No. 28 is apparently based (including, without limitation, excess interest and excess contributions Barney and/or Fred caused Debtor to pay or accrue to its account).

340.  Accordingly, the Trustee hereby objects to Claim No. 28 on the grounds that such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured, pursuant to Bankruptcy Code Section 502(b)(1) (11 U.S.C. § 502(b)(1)).

341.  The Trustee further objects to Claim No. 28 because the claim does not contain adequate documentation to establish a prima facie claim, and the Debtor's books and records do not support the claim in the amount stated.  The filing of this claim does not comply with applicable bankruptcy rules, and under circumstances such as these, where the objecting party (the Trustee) is unable to determine the validity of the claim, this non-compliance is a basis to disallow the claim.

342.  Based on the foregoing, Claim No. 28 should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(b)(1) as unenforceable against the Debtor.

343.  To the extent that Claim No. 28 is not disallowed in its entirety, the Trustee expressly reserves the right to supplement his objections or file additional objections to that claim (including following additional investigation and discovery).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 59 -

25988\2469509.7

Case: 11-03061    Doc# 1    Filed: 03/11/11    Entered: 03/11/11 19:07:41    Page 59 of
61

**REQUEST FOR RELIEF**

The Trustee requests judgment against Defendants as follows:

1. Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie Glaser, Barney Glaser Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational Foundation, Andrew Rhine and Mill Valley Financial Corporation, avoidance and recovery of the Preferential Transfers, pursuant to 11 U.S.C. §§ 547 and 550.

2. Against all Defendants, avoidance and recovery of the Fraudulent Transfers, pursuant to 11 U.S.C. §§ 548 and 550.

3. Against all Defendants, avoidance and recovery of the State Law Fraudulent Transfers, pursuant to California Civil Code § 3439 *et seq.*, and 11 U.S.C. §§ 544(b) and 550.

4. Against Defendants Barney Glaser, Fred Taylor Carolyn Glaser, Bonnie Glaser, Barney Glaser Jr., Twin Sisters LLC and the Glaser Educational Foundation, avoidance and recovery of the Post-Petition Transfers, pursuant to 11 U.S.C. §§ 549 and 550.

5. Against Defendants Barney Glaser, Carolyn Glaser Fred Taylor and 1700 Twin Sisters LLC for damages in an amount to be proven at trial for the Defendants' breach of contract.

6. Against Defendants Barney Glaser and Fred Taylor for damages (including compensatory and punitive damages) in an amount to be proven at trial for the Defendants' breach of their fiduciary duties.

7. Against Defendants Barney Glaser and Fred Taylor for damages (including compensatory and punitive damages) in an amount to be proven at trial for the Defendants' usurpation of Debtor's corporate opportunity.

8. Against all Defendants for damages in an amount to be proven at trial for their unjust enrichment at Debtor's expense.

9. Against all Defendants for damages in an amount to be proven at trial for their conversion of Debtor's property.

10. Against Defendants Barney Glaser, Fred Taylor and Twin Sisters for turnover of property pursuant to 11 U.S.C. §§ 542(a), (b).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND FOR DAMAGES

- 60 -

25988\2469509.7

1     11. Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie

2 Glaser, Barney Glaser Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational

3 Foundation, Andrew Rhine and Mill Valley Financial Corp. for an order subordinating their

4 claims against Debtor in the bankruptcy case to the claims of all other creditors.

5     12. Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie

6 Glaser, Barney Glaser Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational

7 Foundation, Andrew Rhine and Mill Valley Financial Corp. for an order disallowing any claims

8 of Defendants.

9     13. Against Defendants Barney Glaser, Fred Taylor, Carolyn Bear Glaser, Bonnie

10 Glaser, Barney Glaser Jr., Jillian Rhine, Mary Taylor Siebel, Lerner & Bear, Glaser Educational

11 Foundation, Andrew Rhine and Mill Valley Financial Corp. for an order declaring their claims in

12 the bankruptcy case be recharacterized as equity interests.

13     14. Against Defendant Barney Glaser for an order declaring him to be the alter ego of

14 Debtor and holding him liable for damages in an amount to be proven at trial.

15     15. An Order disallowing Claim Nos. 18, 20, 21, 22, 28, 34-42, 58, 111, 124-126, 136,

16 139 in their entirety.

17     16. An award of prejudgment interest at the maximum legal rate as of the date hereof,

18 and an award of post-judgment interest at the maximum legal rate.

19     17. An award of attorneys' fees and the costs of suit herein.

20     18. An award of such other and further relief the Court deems just and proper.

21

22 DATED:  March __, 2011         FARELLA BRAUN + MARTEL LLP

23

24             By: _____/s/ *Kelly A. Woodruff*_____
                         Kelly A. Woodruff
25

26            Attorneys for PLAINTIFF
            TIMOTHY W. HOFFMAN, as Chapter 7

27            Trustee of Cascade Acceptance Corporation

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COMPLAINT TO RECOVER PROPERTY AND
FOR DAMAGES

- 61 -

25988\2469509.7